William Ray **JACOBS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 06–02–00168–CR.

Court of Appeals of Texas, Texarkana.

Submitted June 19, 2003.

Decided July 8, 2003.

Discretionary Review Refused Nov. 5, 2003.

Troy A. Hornsby, Miller, James, Miller & Hornsby, LLP, Texarkana, for appellant.

Marcus D. Taylor, Wood County District Attorney, Henry Whitley, Special Assistant District Attorney, Quitman, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

William Ray Jacobs appeals the trial court's denial of his motion for DNA[1] testing pursuant to Chapter 64 of the Texas Code of Criminal Procedure. In his sole point of error, Jacobs contends he presented sufficient evidence to the trial court to establish a reasonable probability that DNA testing would prove his innocence.

---

1. Deoxyribonucleic Acid. DNA is "a nucleic acid that constitutes the genetic material of all cellular organisms and the DNA viruses." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 447 (27th ed. 1988).

For the reasons stated below, we affirm the trial court's judgment.

## I. Factual Background

On January 8, 1997, a petit jury found Jacobs guilty of aggravated sexual assault, as charged in the indictment.[2] Jacobs pled "true" to having been previously and finally convicted of assault with intent to rape, as further alleged in the indictment. The jury then assessed Jacobs' punishment at imprisonment for life. The trial court entered an affirmative deadly weapon finding. On appeal, this Court affirmed the judgment. *Jacobs v. State*, 951 S.W.2d 900 (Tex.App.-Texarkana 1997, pet. ref'd).

On January 7, 2002, the trial court appointed counsel for the purpose of allowing Jacobs to pursue post-conviction DNA testing. Jacobs filed his motion for post-conviction DNA testing on March 15, 2002. On March 26, 2002, the trial court notified the State that a response, if any, to Jacobs' motion was due by April 22, 2002. The record does not indicate the State filed a response. On April 28, 2002, the trial court granted Jacobs' motion for post-conviction DNA testing and issued written findings of fact and conclusions of law, stating in part:

> Biological material consisted of "scrapings" from the victim's face, saliva samples, oral smear slides, oral "swabbings", "scrapings" from the victim's fingernails and "scrapings" from her clothes. DNA testing was not conducted on the biological material at or prior to trial. The biological material is currently pos-

sessed by the Wood County Sheriff's Office who maintained it at the time of trial. The evidence exists in a condition making DNA testing possible. The evidence has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect.

> The identity of the perpetrator was the major issue at trial. Had the biological evidence been tested under current techniques and resulted in evidence of the presence of another person's DNA besides that of the victim (exculpatory evidence) a reasonable probability exists that Jacobs would not have been prosecuted or convicted of aggravated sexual assault.

The State then forwarded evidence to the Department of Public Safety (DPS) Field Laboratory in Garland, Texas, for DNA testing pursuant to the trial court's order.

On July 5, 2002, Pat Johnson, manager of the DPS Field Laboratory, informed the trial court the evidence submitted to the laboratory contained no nuclear DNA. Analysts found no semen or blood on any of the evidence submitted. Though laboratory workers did find two human hairs among the submitted items, these hairs did not have attached skin cells or hair root material, which would be necessary to perform nuclear DNA testing. To test a strand of hair that contains no root or skin cells, analysts would have to conduct a different test called mitochondrial DNA testing.[3] DPS laboratories, however, are

---

2. The indictment alleged Jacobs used or exhibited a firearm during the commission of the sexual assault in the sleeping compartment of his tractor truck.

3. Mitochondrial DNA testing involves analyzing the strands of DNA contained in the mitochondria. The mitochondria are "small spherical to rod-shaped components (orga-

nelles) found in the cytoplasm of cells, enclosed in a double membrane, with an internal membrane space between the two units, the inner one infolded into the interior of the organelle as a series of projections (cristae)." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1043 (27th ed. 1988). "A single mitochondrion contains 37 genes on a circular mitochondrial DNA, compared with about 35,000 genes con-

only equipped for nuclear DNA testing. Mitochondrial DNA testing is not yet widely available. Johnson concluded his letter by recommending the trial court pursue mitochondrial DNA testing and by offering to give the trial court the names and telephone numbers of laboratories that could perform mitochondrial DNA testing on the hair samples. On July 22, 2002, the trial court asked Johnson to send it the names and telephone numbers of laboratories that perform mitochondrial DNA testing.

The State filed a motion to reconsider DNA testing on July 25, 2002. Jacobs filed a response to the State's motion on August 2, 2002. One week later, the trial court granted the State's motion after conducting a hearing on the issue. The trial court then held that a wealth of inculpatory evidence existed, including eyewitness testimony and testimony from the defendant's wife establishing the defendant's identity as the perpetrator. Based on that evidence, the trial court found DNA testing would not serve to exculpate Jacobs or dissuade the State from prosecuting the case. Accordingly, the trial court denied Jacobs' motion for post-conviction DNA testing. Jacobs filed his notice of appeal to this Court on September 12, 2002.

## II. Jurisdiction

The State contends this Court lacks jurisdiction to consider the merits of Jacobs' appeal. The trial court signed the order denying Jacobs' motion for DNA testing on August 12, 2002. The order was filed with the district clerk on August 13, 2002. Jacobs filed his notice of appeal on September 12, 2002—thirty-one days after the order was signed and thirty days after it was filed. Unless a motion for new trial is

filed, an appellant must file a notice of appeal within thirty days of the trial court's judgment to vest jurisdiction over the case with the appellate court. Tex. R.App. P. 26.2(a).

The Amarillo Court of Appeals recently addressed a similar case involving procedural jurisdiction. In *In re Marriage of Gary*, No. 07–01–0466–CV, —— S.W.3d ——, ——, 2002 WL 1806800, at *1 (Tex. App.-Amarillo Aug. 7, 2002, no pet. h.) (unpublished order on jurisdiction), the appellant filed his notice of appeal one day late, although the certificate of service predated the filing deadline. The Amarillo court, citing *Verburgt v. Dorner*, 959 S.W.2d 615, 617 (Tex.1997) said, "[a] motion for extension of time is implied when an appellant acting in good faith files, within the 15 day period in which the appellant would be entitled to move to extend the filing deadline, documents showing a bona fide intent to appeal." *Gary*, —— S.W.3d at ——, 2002 WL 1806800, at *1. The Amarillo court then granted the implied motion for extension of time to file a notice of appeal, thereby conferring the court with jurisdiction to consider the merits of the appeal.

In the case now before this Court, Jacobs' notice of appeal was filed by the district clerk one day after the thirty-day deadline. The certificate of service states the notice was mailed two days before the deadline. "A document received within ten days after the filing deadline is considered timely filed if ... it was deposited in the mail on or before the last day for filing." Tex.R.App. P. 9.2(b)(1). Under the mailbox rule, we deem Jacobs' notice of appeal timely filed. Alternatively, granting the implied motion for extension of

tained in the nuclear DNA." Comm. on Sci., Eng'g, & Pub. Policy, The Nat'l Acad. of Sciences, Scientific & Med. Aspects of Human

Reprod. Cloning, 267 (2002), <http:// books.nap. edu/books /0309076374/ html/267.html>.

time to file the notice of appeal would be sufficient to confer jurisdiction over the case with this Court. Jurisdiction exists for us to reach the merits of Jacobs' appeal.

## III. DNA Testing

### A. Standard of Review

 A trial court's denial of a motion for post-conviction DNA testing is reviewed under a bifurcated process. *Rivera v. State*, 89 S.W.3d 55, 59 (Tex.Crim. App.2002) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997)); *Green v. State*, 100 S.W.3d 344, 344 (Tex. App.-San Antonio 2002, pet. filed). We afford almost total deference both to the trial court's determination of historical fact and to its application of law-to-fact issues that turn on credibility and demeanor. *Rivera*, 89 S.W.3d at 59; *Green*, 100 S.W.3d at 344. But we review de novo all other application of law-to-fact issues. *Rivera*, 89 S.W.3d at 59; *Green*, 100 S.W.3d at 344. This de novo review usually includes the ultimate issue in post-conviction DNA testing cases, "whether a reasonable probability exists that exculpatory DNA would prove innocence." *Rivera*, 89 S.W.3d at 59.

 Citing *Rivera*, Jacobs contends that the scope of the evidence an appellate court may review is limited to the evidence relating to the motion and/or hearing on the motion for DNA testing. We do not read *Rivera* to either directly or indirectly so narrowly limit the scope of our review. Undoubtedly, the trial court would have before it the court's entire file when ruling on a motion for post-conviction DNA testing. Because this case had been previous-

ly appealed, the trial court had access to testimony in the reporter's record.[4] In short, the trial court itself would not be limited to examining evidence offered by the parties during post-conviction litigation. If we are to review de novo those issues of fact that do not turn on witness credibility or demeanor, we must have available the same evidence to which the trial court had access. *See id.* To hold otherwise would thwart our ability to effectively review these types of cases.

Second, requiring the nonmoving party—which in DNA cases will usually be the State—to reoffer the entirety of its evidence (so as to counter the movant's claims regarding false identification) would be extremely burdensome and a waste of judicial economy. Such a procedure might turn DNA hearings into quasi mini-trials, complete with sponsoring witness testimony, affidavits of interested parties, and challenges to evidentiary admissibility.

Third, a plain reading of the Texas Rules of Appellate Procedure contemplates our ability to supplement the clerk's record with *any* relevant item that is part of the entire record below. *See* Tex.R.App. P. 34.5(c)(1). The trial court is usually in the best position to take judicial notice of items already in evidence from previous proceedings, including witness testimony, recorded confessions (written or oral), photographs, or other tangible evidence. *See* Tex.R. Evid. 201. This Court may also take notice of its own file from the direct appeal of this case. *Cf. Tex. Capital Sec. v. Sandefer*, 108 S.W.3d 923 (Tex.App.-Texarkana 2003) (appellate court implicitly taking judicial notice of findings in sister court's opinion in prior appeal between same parties). Accordingly, we do not find

---

**4.** The trial court's judgment reflects it reviewed the reporter's record of the trial before issuing its judgment on the State's motion for reconsideration. In support of its opposition to further testing, the State's motion to reconsider had incorporated references to specific portions of the reporter's record.

the scope of our ability to review the evidence to be limited in the manner suggested by Jacobs.

## B. Obtaining DNA Testing Under Chapter 64

At oral argument, Jacobs reasoned he should prevail on appeal if he could establish by a preponderance of the evidence that there is a reasonable probability that DNA testing would have created a reasonable doubt among the jury at trial. We do not concur with Jacobs' reasoning.

■ To obtain post-conviction DNA testing, the convicted person must establish by a preponderance of the evidence that a reasonable probability exists that he or she would not have been prosecuted or convicted if "exculpatory results had been obtained through DNA testing."[5] *Rivera*, 89 S.W.3d at 59 (citing TEX.CODE CRIM. PROC. ANN. art. 64.03(a)(1)(A)(i), (2)(A)). This requirement is not a two-part test. "The convicted person is not required to show *both* that a reasonable probability exists that the person would not have been prosecuted *and* that the person would not have been convicted." S.J. OF TEX., 77th Leg., R.S. 995 (2001) (emphasis added), <http://www.capitol.state.tx.us/sjrnl/77r/pdf/4–2.pdf>, at *25. Exculpatory evidence is that which tends to free the defendant from blame or accusation or otherwise establish his or her innocence. BLACK'S LAW DICTIONARY 577, 588 (7th ed. 1999).

■ The statutory requirement that testing results be exculpatory is not met if the DNA evidence would "merely muddy the waters." Instead, the evidence must

tend to prove the defendant's innocence. *Rivera*, 89 S.W.3d at 59 (citing *Kutzner v. State*, 75 S.W.3d 427, 439 (Tex.Crim.App. 2002)). Stated differently, DNA testing must conclusively outweigh all other evidence of the convicted's guilt. *Id.*; *Thompson v. State*, 95 S.W.3d 469, 472 (Tex.App.-Houston [1st Dist.] 2002, pet. filed).

■ Jacobs contends,

the evidence establishes that the testing could result in evidence of the involvement of a third party: not the victim and not Jacobs. Therefore, had the biological evidence been tested and resulted in evidence of the presence of another person's DNA besides that of the victim (exculpatory evidence), a reasonable probability exists that Jacobs would not have been prosecuted or convicted of aggravated sexual assault.

In essence, Jacobs hopes mitochondrial DNA testing will show the hair samples came from a third party. Such evidence, however, would "merely muddy the waters" by demonstrating that a third party had, at some point in time (but not necessarily at the time of the crime), been inside the sleeper compartment of the tractor truck. Such evidence would not, on its own, exonerate Jacobs and thereby support the ordering of a DNA test. *See Rivera*, 89 S.W.3d at 59; *Kutzner*, 75 S.W.3d at 439.

Accordingly, the evidence before the trial court did not show DNA testing would prove Jacobs' actual innocence. This conclusion might be different if the sexual assault examination had yielded seminal or

---

5. Additionally, "Article 64.03(a) only permits a trial court to order DNA testing if the court finds that identity was or is an issue in the case." *Green v. State*, 100 S.W.3d 344, 344 (Tex.App.-San Antonio 2002, pet. filed) (citing TEX.CODE CRIM. PROC. ANN. art. 64.03(a)(1)(B) (Vernon Supp.2003)). The parties in this case, however, agree that identity was and is an issue. Therefore, we need not address this element of the movant's burden of proof. *See* TEX.CODE CRIM. PROC. ANN. art. 64.03(a)(1)(B).

blood DNA evidence from the perpetrator. However, the presence of a third-party hair on Jacobs' bed linens or clothing not belonging to the victim does not necessarily prove Jacobs' innocence. We hold the trial court did not err by denying Jacobs' motion for post-conviction DNA testing.

We affirm the trial court's judgment.