**William Ray JACOBS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 06–05–00118–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted Oct. 24, 2005.

Decided Nov. 16, 2005.

---

William Ray Jacobs, Huntsville, pro se.

Henry Whitley, Special Asst. Dist. Atty., Marcus D. Taylor, Dist. Atty., Quitman, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

William Ray Jacobs appeals from the denial of his post-conviction motion for DNA testing in connection with his 1997 conviction for aggravated sexual assault. This is Jacobs' second effort to obtain such testing. His first motion for testing was denied by the trial court in 2002, and its denial was affirmed by this Court in *Jacobs v. State*, 115 S.W.3d 108 (Tex.App.-Texarkana 2003, pet. ref'd). Jacobs was

convicted for forcing a woman, at gunpoint, to perform oral sex on him.[1]

In disposing of his first motion, the trial court acknowledged there was biological material available for testing, including "scrapings," from the victim's face, saliva samples, and "scrapings" from fingernails and clothing. *Id.* at 110. Two human hairs were found when submitted to a crime laboratory for testing, but they had no root material or skin cells as are necessary to perform nuclear DNA testing, and mitochondrial DNA testing that would be effective was not then available at that laboratory. The State filed a motion to reconsider, which, after hearing, was granted by the trial court. Based on a large amount of inculpatory evidence, including eyewitness testimony and testimony from the defendant's wife, the trial court found that DNA testing would not serve to exculpate Jacobs and denied that motion. We affirmed.

In this, his second motion for DNA testing, Jacobs duplicated the same requests made previously. Article 64.01(b)(1)(A)(ii), (b)(2) allows a second attempt to obtain DNA analysis in light of improved technical abilities. TEX.CODE CRIM. PROC. ANN. art. 64.01(b)(1)(A)(ii), (b)(2) (Vernon Supp. 2005).

■ The authority of a court to hear a particular case is a systemic requirement that cannot be waived or conferred by consent and which may be considered at any time. *Mendez v. State*, 138 S.W.3d 334, 340 (Tex.Crim.App.2004) (citing *Marin v. State*, 851 S.W.2d 275, 279–80 (Tex. Crim.App.1993)); *see also Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex.1993) (holding it is appropriate for reviewing court to raise sua sponte issue of lower court's subject mat-

---

[1]. Jacobs was convicted in 1997, and his conviction was affirmed on appeal by this Court

in 1997. *Jacobs v. State,* 951 S.W.2d 900 (Tex.App.-Texarkana 1997, pet. ref'd).

ter jurisdiction and address it for the first time on appeal).

■ This is evidently a question of first impression. We first address Jacobs' initial argument: that the trial court which ruled on his motion had no authority to do so. Article 64.01(a) requires the submission of DNA testing to be to made "to the convicting court." TEX.CODE CRIM. PROC. ANN. art. 64.01(a) (Vernon Supp.2005). The convicting court was the 114th Judicial District Court, which in 1997 had jurisdiction over Wood and Smith Counties. Jacobs was tried and convicted in Wood County. However, in 1999, the 114th court was divested of jurisdiction over Wood County, and its authority over that county was vested in the newly created 402nd Judicial District Court.

■ Jacobs' motion was thus decided by the 402nd Judicial District Court, which is the successor court over the county in which he was convicted. Jacobs argues that, because the DNA statute requires the determination to be made by the "convicting court," the 402nd court has no authority over his motion. We disagree. The legislation creating that court required all cases then pending in the 114th Judicial District Court to be transferred to the 402nd Judicial District Court. Act of May 30, 1999, 76th Leg., R.S., ch. 1337, §§ 10, 23, 1999 Tex. Gen. Laws 4547, 4549, 4551 (effective September 1, 1999). It did not explicitly address the status of cases that had previously been decided by that court. We also recognize that criminal cases are required to be tried in the county in which some portion of the offense occurs, as shown by the list of venue requirements found in Article 13 of the Texas Code of Criminal Procedure. The DNA statute also contains provisions requiring responses from the state—which in this context is the district attorney's office for the county of conviction—and if hearings are necessary, there is authority that they must be held in the county of conviction. If the court is required to appoint counsel, the procedures set out by the Code authorize only district courts trying cases in the county to appoint counsel, TEX.CODE CRIM. PROC. ANN. art. 26.04(b)(1) (Vernon Supp. 2005), and they are to be paid according to a fee schedule adopted (among others) by district judges trying criminal cases in that county. TEX.CODE CRIM. PROC. ANN. art. 26.05(b) (Vernon Supp.2005). If a reporter's record is to be prepared for appellate review, the reporter must be paid from the general funds of the county in which the offense was committed. TEX.R.APP. P. 20.2.

Although the statute creating the 402nd Judicial District Court does not explicitly state it has jurisdiction over DNA appeals,[2] it is apparent from the scope of the enacting statute and the other requirements common to all criminal cases—as well as the removal of Wood County from the jurisdiction of the 114th Judicial District Court—that the Legislature intended for the 402nd court to act as the successor court to the 114th court for these purposes. Thus, we conclude that the motion was properly presented to the 402nd Judicial District Court of Wood County. The contention of error is overruled.

■ Jacobs contends on the merits that the court erred by denying his motion for DNA testing this time because he established that a reasonable probability existed that the testing would prove his innocence. In his argument, he takes the position that the DNA evidence could establish the in-

---

**2.** This would be impossible in any event, because the DNA statutes were not enacted until 2001.

volvement of a third person, thus it could prove his innocence. This is the same argument posited in his initial DNA motion, covering the same evidence, that we addressed in our prior opinion.

For the same reasons as stated in that opinion, we likewise conclude here that there is nothing to suggest that, even if DNA testing showed that a third party was present, it would necessarily exonerate Jacobs. *See Jacobs,* 115 S.W.3d at 113.

We affirm.