

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-08-00048-CR
_____

WILLIAM RAY JACOBS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 114th Judicial District Court
Wood County, Texas
Trial Court No. 14,725-96

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

## OPINION

This is an appeal by William Ray Jacobs of the denial by the trial court of Jacobs's motion for post-conviction deoxyribonucleic acid (DNA) testing pursuant to Article 64.03 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 64.03 (Vernon Supp. 2008).

Jacobs was convicted in 1997 of aggravated sexual assault, having been found guilty of forcing a woman at gunpoint to perform oral sex on him. After having pled "true" to having been previously and finally convicted of assault with intent to rape, as further alleged in the indictment, the jury assessed his punishment at life imprisonment. The trial court entered an affirmative deadly weapon finding. On appeal, this Court affirmed the judgment. *Jacobs v. State*, 951 S.W.2d 900 (Tex. App.—Texarkana 1997, pet. ref'd).

The evidence presented at trial was truly substantial. The victim had testified that her car had broken down and that Jacobs, a truck driver, had first presented himself as a good Samaritan, offering her a lift. After the victim had gotten into the truck Jacobs was driving, Jacobs first drove the truck to a trailer switch point, switched trailers, and then (upon re-entering the truck cab) threatened her with a gun and forced her to perform oral sex on him. The victim represented that her assailant had ejaculated after he withdrew his penis from her mouth. After this, Jacobs drove a short distance and then deposited the victim alone and in the rain on the highway. The victim was retrieved from the highway by relatives, who eventually returned the victim to the trailer switch point, where she got the license number of the trailer and the name "Vernon" from the side of the

2

trailer. The victim then went to a nearby town, where a sexual assault nurse examiner took her statement and saved "scrapings" from the side of her face. The victim described Jacobs and the interior of the truck he was driving and many of its contents. The trailer bearing the license number the victim wrote down was identified as belonging to Vernon Sawyer trucking of Louisiana (Jacobs's employer) and the trailer had been assigned to Jacobs. After he was arrested, Jacobs enlisted a friend to go to the truck and remove many of its contents (including a pistol), but the friend was discovered as having done so; all of the removed items were recovered except for the pistol, which the friend said had been tossed in a nearby pond. Jacobs also wrote a letter to his wife wherein he attempted to have her fabricate an alibi for him. Jacobs matched the description given by the victim, and the victim identified Jacobs from a photographic lineup. Jacobs appealed his conviction, complaining of the admission into evidence of the letter to his wife and his wife's testimony concerning that letter.[1]

Jacobs has made two previous attempts to obtain post-conviction DNA testing in connection with that conviction. His first motion for testing was denied by the trial court in 2002, and its denial was affirmed by this Court. *Jacobs v. State*, 115 S.W.3d 108 (Tex. App.—Texarkana 2003, pet. ref'd).

---

[1] Jacobs also unsuccessfully attempted to address this same issue previously denied by his first appeal by filing a petition for writ of mandamus. *In re Jacobs*, No. 06-03-00171-CV, 2004 Tex. App. LEXIS 220 (Tex. App.—Texarkana Jan. 9, 2004, orig. proceeding).

In disposing of his first motion, the trial court stated that it believed that there was biological material available for testing, including "scrapings," from the victim's face, saliva samples, and "scrapings" from fingernails and clothing worn by the victim as well as two human hairs (the hairs having been found in the cab of Jacobs's truck). *Id.* at 110. The trial court ordered these to be submitted to DNA testing.

After submission of the material to the Texas Department of Public Safety (DPS) crime laboratory, the laboratory responded that

> no semen or blood was detected on any of the items in the sexual assault evidence collection kit, or on the clothing or bed sheet submitted. Prior to performing any DNA testing, it is necessary to identify some biological material. None was detected on any items in this case, except for the hair recovered from the blue shorts and from the bed sheet.

The two human hairs were found to have no root material or skin cells as are necessary to perform nuclear DNA testing (the only means of testing then available through that laboratory, mitochondrial testing not then available there). The State filed a motion to reconsider, which, after hearing, was granted by the trial court. Based on a large amount of inculpatory evidence, summarized above, the trial court found that DNA testing would not serve to exculpate Jacobs and denied that motion. We affirmed.

In his second motion for DNA testing, Jacobs duplicated the same requests made previously.[2] He alleged that improved DNA testing techniques would show a reasonable probability that he

---

[2]He also raised a jurisdictional issue that is not germane to this appeal.

would not have been prosecuted or convicted of the charged offense. The trial court denied the request and we affirmed. *Jacobs v. State*, 181 S.W.3d 487 (Tex. App.—Texarkana 2005, pet. ref'd).

In our previous (2003) opinion, we looked at the evidence as it could support a jury verdict and concluded that the evidence of guilt was very strong. We pointed out that although a jury could infer that Jacobs asked for the alibi because of guilt, one could also reasonably infer a fear of the legal system and an attempt to provide an excuse that would be readily accepted by the local police.

The trial court made its decision, and we reviewed that decision, based upon opinions holding that DNA testing must conclusively outweigh all other evidence of the convicted's guilt. *Jacobs*, 115 S.W.3d at 113. We used that same yardstick in affirming the denial of the request for future DNA testing as filed by Jacobs in 2005. *Jacobs*, 181 S.W.3d 487. However, that standard has changed. Under the newer standard, the burden on the person seeking an order for such testing has been lowered; now, before a court must allow DNA testing, the person must prove by a *preponderance* of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing. TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(2)(A); *Smith v. State*, 165 S.W.3d 361, 364 (Tex. Crim. App. 2005). If, regardless of the results, testing would not show by a preponderance of the evidence that appellant would not have been convicted, then there is no reason for the court to order the DNA testing. *Prible v. State*, 245 S.W.3d 466, 470 (Tex. Crim. App. 2008).

5

The nature of review has been further explained by the court recently in *Esparza v. State*, 282 S.W.3d 913 (Tex. Crim. App. 2009). That opinion examines another decade-old rape conviction. The court of appeals had affirmed the trial court's denial of the request for DNA testing, concluding that Esparza had failed to establish by a preponderance of the evidence that he would not have been convicted—because (unlike the *Smith* case)[3] there was evidence that the victim had sex a day or two before the assault. Thus, the court reasoned any ejaculate might have had a different source, and there was no proof that the attacker had left seminal fluid. The court also relied on the existence of otherwise sufficient evidence to identify the attacker.

The Texas Court of Criminal Appeals reversed. The record, it held, was inadequate to support the State's position, as there was no evidence about the victim's earlier sexual encounter (i.e., whether any semen or seminal fluid was released in her vagina during the encounter), no evidence about whether she douched after having sex, and most importantly, because there was no scientific evidence supporting the State's conclusion that biological material deposited two days before she was sexually assaulted would still be present and detectable when the rape kit was conducted. It went on to address the court of appeals's second reason for upholding the trial court's ruling (that there was sufficient other evidence to establish guilt) and held that the decision conflicted with *Blacklock v. State*, in which the Texas Court of Criminal Appeals had held that regardless of eyewitness

---

[3]*Smith*, 165 S.W.3d 361.

testimony by a person who knew and identified the attacker, exculpatory DNA results would establish his innocence. *Blacklock v. State*, 235 S.W.3d 231 (Tex. Crim. App. 2007).

> In sexual assault cases like this, any overwhelming eye-witness identification and strong circumstantial evidence (e.g., Esparza's business card, light-blue, four-door car, age, and the fireworks on the floorboard) supporting guilt is inconsequential when assessing whether a convicted person has sufficiently alleged that exculpatory DNA evidence would prove his innocence under Article 64.03(a)(2)(A).

*Esparza*, 282 S.W.3d at 922.

In Jacobs's case, however, the statutory change in the standard to qualify for further DNA testing is a distinction which makes no difference in the outcome. Jacobs fails under both the older measure and under the newer one to meet the burden necessary to qualify for DNA testing.

This conclusion rests largely upon the statement contained in the letter from the DPS laboratory that no biological materials (other than the hairs) exist to be tested. Even though Jacobs makes reference to this letter in his brief, we examine whether judicial notice of the evidence the letter provides is possible.

There was no hearing conducted on Jacobs's application and no formal order was entered. Accordingly, we do not know what factors entered into the decision of the trial court to deny the application. However, as the reviewing court, we may presume that the trial court took judicial notice of the record without any request being made and without any announcement that it has done so. *Vahlsing, Inc. v. Missouri Pac. R.R. Co.*, 563 S.W.2d 669, 674 (Tex. Civ. App.—Corpus Christi 1978, no writ). A trial court is entitled to take judicial notice of its own records where the same

subject matter between the same parties is involved. *Gardner v. Martin*, 162 Tex. 156, 345 S.W.2d 274, 276 (1961); *Mitchell v. Baum*, 668 S.W.2d 757, 761 (Tex. App.—Houston [14th Dist.] 1984, no writ).

Further, a court of appeals may, in the exercise of its discretion, take judicial notice of "adjudicative facts"[4] for the first time on appeal. *Watkins v. State*, 245 S.W.3d 444, 455–56 (Tex. Crim. App. 2008). The letter and a record of the trial court's reliance on it in previous motions filed by Jacobs are contained within the records of both this Court and the trial court. We, therefore, presume that the trial court relied upon the evidence of the nonexistence of testable materials in denying Jacobs's application for further DNA testing, and we take notice of its content in our determination.

As regards further testing on the hairs, in our opinion rendered in Jacobs's 2003 appeal, we observed that:

> In essence, Jacobs hopes mitochondrial DNA testing will show the hair samples came from a third party. Such evidence, however, would "merely muddy the waters" by demonstrating that a third party had, at some point in time (but not necessarily at the time of the crime), been inside the sleeper compartment of the tractor truck. Such evidence would not, on its own, exonerate Jacobs and thereby support the ordering of a DNA test.
>
> Accordingly, the evidence before the trial court did not show DNA testing would prove Jacobs' actual innocence. This conclusion might be different if the sexual assault examination had yielded seminal or blood DNA evidence from the

---

[4]"A controlling or operative fact, rather than a background fact; a fact that concerns the parties to a judicial or administrative proceeding and that helps the court or agency determine how the law applies to those parties." BLACK'S LAW DICTIONARY 669 (9th ed. 2009).

8

perpetrator. However, the presence of a third-party hair on Jacobs' bed linens or clothing not belonging to the victim does not necessarily prove Jacobs' innocence.

*Jacobs*, 115 S.W.3d at 113–14 (citations omitted).

Even though laws may change, the exercise of simple logic does not. In other words, although the standards to show entitlement to DNA testing have changed, the rationale as to the exculpatory nature of the hair samples has not. Even if DNA testing were to reveal that the hairs belonged to neither Jacobs nor the victim, that does nothing to exculpate Jacobs.

In regard to the scrapings and swabs taken from the victim, Article 64.03 provides that a convicting court may order forensic DNA testing only if the court finds (i) the evidence still exists, is in a condition making DNA testing possible, and has been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect; and (ii) identity was or is an issue in the case. TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(1).

We take judicial notice of the records in our possession from the previous actions filed in this Court by Jacobs. In particular, we again reference the letter from the DPS laboratory mentioned in our 2003 opinion on this matter.[5] As previously stated, that letter said, in part, that

> no semen or blood was detected on any of the items in the sexual assault evidence collection kit, or on the clothing or bed sheet submitted. Prior to performing any DNA testing, it is necessary to identify some biological material. None was detected on any items in this case except for the hair recovered from the blue shorts and from bed sheet.

_____

[5]*Jacobs*, 115 S.W.3d at 110.

The language in the letter is critical. In this instance, Jacobs requested mitochondrial DNA analysis, polymerase chain reaction, and short tandem repeat DNA analysis testing of all biological material held by the sheriff's department. He specified that he sought testing of the scrapings, of mouth swabs, and also a more generic request that all biological materials be examined (including some hairs that were not capable of being tested at the time of the trial or the initial DNA request). Such things would be a part of the sexual assault collection kit. Other than the hairs, there is no material to be tested.

The warp speed at which the improvements to the efficacy and accuracy of DNA testing have occurred is common knowledge. Jacobs's brief cites a number of the studies and reports concerning the expanding ability for DNA testing and the various applications of those results. However, all of that presumes that there is something to test, yet, the statements by the laboratory indicate there is nothing upon which tests can be conducted.

In summary, the testing of the hair samples would be useless to provide exculpatory evidence, and there are no other materials upon which tests can be conducted.

10

We affirm the order denying further DNA testing.

                                        Bailey C. Moseley
                                        Justice

Date Submitted:     July 22, 2009
Date Decided:       August 7, 2009

Publish

11