# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-12-00299-CR
NO. 03-12-00300-CR
NO. 03-12-00301-CR

**Guadalupe Padilla, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
NO. D-1-DC-95-952802, THE HONORABLE MICHAEL LYNCH, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Guadalupe Padilla is serving a thirty-seven-year prison sentence concurrently with a fifteen-year prison sentence imposed following his convictions for aggravated sexual assault of a child and indecency with a child by sexual contact. Padilla now appeals three trial court orders entered in connection with his pro se request for subsequent post-conviction forensic DNA testing under Chapter 64 of the Texas Code of Criminal Procedure. For the reasons that follow, we affirm the trial court's order denying further post-conviction DNA testing and dismiss the appeals of the trial court's order denying the appointment of counsel and the trial court's order denying five ancillary motions.

## BACKGROUND

In October 1994, Guadalupe Padilla was on parole from a prison sentence for burglary and living in Austin with his girlfriend and her eleven-year-old daughter. *See Padilla v. State*, No. 03-02-00345-CR, 2003 WL 21401256, at *1 (Tex. App.—Austin June 19, 2003, pet. ref'd) (mem. op., not designated for publication). On the night of October 22, Padilla sexually assaulted the young girl while his girlfriend was at work. *Id.* The girl told her mother about the assault when she returned home that evening after work. *Id.* The mother confronted Padilla and told him she was going to call the police. *Id.* He fled the house that night never to return. *Id.*

A grand jury indicted Padilla for the sexual abuse of the child on June 6, 1995. *Id.* Although Padilla was arrested multiple times between 1995 and 2000 for parole violations, he was not arrested on the outstanding capias for the sexual abuse charges until May 3, 2000. *Id.* At trial, the State presented evidence of the results of DNA testing performed on the biological evidence in the case prior to trial. This evidence, as reflected in the DPS lab report, showed that testing of the samples taken from the victim during the sexual assault exam detected no semen on the vaginal swabs. The lab report also indicated that DNA testing was done on the bed sheet from the bed where the sexual assault occurred. The test results determined that the victim was excluded as a contributor to the semen stains on the sheet. On January 30, 2002, the jury found Padilla guilty of aggravated sexual assault of a child and indecency with a child by sexual contact, and assessed his punishment at imprisonment for 37 and 15 years respectively. *See* Tex. Penal Code §§ 12.32, 12.33, 21.11(a)(1), 22.021. This Court affirmed his convictions on June 19, 2003. *See Padilla*, 2003 WL 21401256, at *5. Petition for discretionary review was refused and the mandate was issued on April 28, 2004.

On September 21, 2004, Padilla filed a pro se request for the appointment of counsel to assist him in seeking post-conviction DNA testing. *See* Tex. Code Crim. Proc. art. 64.01(c).[1] The trial court denied his request on September 15, 2006. That decision was not appealed.

On January 9, 2007, Padilla filed his second pro se request for the appointment of counsel to pursue post-conviction DNA testing. On December 7, 2007, the trial court denied that request, but on appeal this Court reversed the trial court's order and held that Padilla was entitled to appointed counsel.[2] *See In re Padilla*, No. 03-07-00712-CR, 2008 WL 2468735, at *3 (Tex. App.—Austin June 18, 2008, no pet.) (mem. op., not designated for publication).[3]

On remand, the trial court appointed counsel who filed a motion for DNA testing on March 31, 2009. Subsequent to the motion, the trial court entered several orders: one on June 30, 2009 granting STR testing, another on March 5, 2010 granting further STR testing, and a third on September 9, 2010 granting Y-STR testing. Padilla filed a pro se notice of appeal from the trial court's September 9, 2010 order, but this Court dismissed the appeal for want of jurisdiction because an order granting DNA testing is not a final order. *See Ex parte Padilla*,

---

[1] Since its enactment, Chapter 64 of the Texas Code of Criminal Procedure has undergone several amendments, most recently in 2011. The outcome of our opinion is not affected by the amendments. For convenience, all citations to the Code of Criminal Procedure are to the version of the code as they existed in 2011 when Padilla filed his motions, prior to the effective date of the 2011 amendments.

[2] Due to a recently issued opinion by the Court of Criminal Appeals, *Blacklock v. State*, 235 S.W.3d 231 (Tex. Crim. App. 2007), the State conceded Padilla's entitlement to appointed counsel in its brief and joined in the request for remand to the trial court for the appointment of counsel.

[3] This opinion was issued before the Court of Criminal Appeals issued its opinion in *Gutierrez v. State*, holding that an order denying appointed counsel under Article 64.01(c) is not an immediately appealable order. *See Gutierrez v. State*, 307 S.W.3d 318, 319 (Tex. Crim. App. 2010).

No. 03-10-00667-CR, 2010 WL 5019166, at *1–2 (Tex. App.—Austin Dec. 10, 2010, pet. ref'd) (mem. op., not designated for publication). In that opinion, we advised that when the trial court entered its final order regarding the results of the DNA testing, Padilla could then file his notice of appeal.

The results of the post-conviction STR DNA testing performed on the bed sheet revealed that (1) the victim was excluded as a contributor to the semen stains on the bed sheet, (2) Padilla could not be excluded as the contributor to the stains on the sheet, and (3) two of the semen stains contained a mixture of DNA profiles of Padilla and an unknown individual. The STR testing of the victim's vaginal swabs indicated that (1) no human male DNA was detected on the vaginal swabs, (2) the DNA profile from the vaginal swabs was consistent with a mixture from which the victim could not be excluded as the contributor of the major component, and (3) due to the low number of alleles in the minor component of the mixture profile, no comparisons were made. The results of the post-conviction Y-STR DNA testing revealed that no Y-STR profiles were obtained from the victim's vaginal swabs. The lab did not perform Y-STR analysis on the semen stains on the bed sheet because the previous STR results indicated that Padilla could not be excluded as a contributor to the semen stains and Y-STR analysis would not produce any additional information.

The trial court entered its final order regarding the DNA test results on July 29, 2011, concluding that the results of the post-conviction DNA testing were not exculpatory and that it was not reasonably probable that Padilla would not have been convicted had those results been available during his trial. No appeal was taken from that order.

4

On August 9, 2011, Padilla filed a subsequent pro se motion for DNA testing.[4] On October 4, 2011, Padilla filed another pro se request for the appointment of counsel to file a motion for post-conviction DNA testing. In March 2012, Padilla filed five additional pro se motions.[5] On March 27, 2012, the trial court entered orders denying Padilla's August 9, 2011 motion for additional DNA testing and his third request for the appointment of counsel. In each of these orders, the trial court found that DNA testing, "STR and/or Y-STR," had been conducted on the biological evidence in this case on January 25, 2002, June 18, 2010, and November 2, 2010. The court also noted that the victim knew Padilla prior to trial as her mother's live-in boyfriend and positively identified him as the man who sexually assaulted her. The court further found that identity "was not and is not an

---

[4] The motion was entitled *Defendant's Amended Pro Se Motion for Additional DNA Testing Using Newer Testing Techniques Under Article 64.01(b)(2) Texas Code of Criminal Procedure*. However, the trial court's final order regarding the results of the DNA testing disposed of the previous motion for DNA testing filed by counsel. Thus, there was no pending motion to amend. Accordingly, the trial court treated this motion as initiating a subsequent request for DNA testing.

[5] The motions included the following documents entitled:

(1)    *Defendant's Motion for Recusal of District Attorney's Office, Stay of Proceedings, and Appointment of Special Prosecutor*, filed March 8, 2012;

(2)    *Motion for Discovery of Exculpatory Favorable Evidence and Evidence of Innocence*, filed March 8, 2012.

(3)    *Motion to Stay Post-Conviction DNA Testing Until Evidence, Description of the Condition of Evidence and a Sufficient Chain of Custody Has Been Established, Under Statutory Requirements of Chapter 64, V.A.C.C.P.*, filed March 23, 2012;

(4)    *Motion to Transcribe Hearings*, filed March 26, 2012; and

(5)    *Motion for Hearing Date on Defendant's Motion for Recusal of District Attorney's Office; Request for Appointment of Counsel for DNA Testing; and Request for Bench Warrant*, filed March 26, 2012.

5

issue in this case." The trial court concluded, "Because identity was not and is not an issue in this case, there are no 'reasonable grounds' for a motion for forensic DNA testing to be filed in this case." Consequently, the trial court also found that it was not required to appoint counsel for Padilla. On April 2, 2012, the trial court entered a separate order denying the five above-described motions. Padilla appeals these three orders of the trial court.

## DISMISSAL OF APPEALS

Padilla filed separate notices of appeal for each of the trial court's three orders. His first notice of appeal (appellate number 03-12-00299-CR) appeals the trial court's order denying his request for appointed counsel under Article 64.01(c) of the Texas Code of Criminal Procedure. His third notice of appeal (appellate number 03-12-00301-CR) appeals the trial court's order denying the five motions he filed in connection with his second request for post-conviction DNA testing.

### *Appointment of Counsel in 03-12-00299-CR*

In Texas, appeals in a criminal case are permitted only when they are specifically authorized by statute. *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 915 (Tex. Crim. App. 2011); *see Bayless v. State*, 91 S.W .3d 801, 805 (Tex. Crim. App. 2002) ("[A] defendant's right of appeal is a statutorily created right."); *see also Apolinar v. State*, 820 S.W.2d 792, 794 (Tex. Crim. App. 1991) ("The courts of appeals do not have jurisdiction to review interlocutory orders unless that jurisdiction has been expressly granted by law."). "The standard for determining jurisdiction [of an appellate court] is not whether the appeal is precluded by law, but whether the appeal is authorized by law."

6

*State ex rel. Lykos*, 330 S.W.3d at 915 (quoting *Abbott v. State*, 271 S.W.3d 694, 696–97 (Tex. Crim. App. 2008)).

Chapter 64 of the Texas Code of Criminal Procedure establishes the procedures for a convicted person to obtain post-conviction DNA testing. The statute authorizes an appeal "under this chapter." Tex. Code Crim. Proc. art. 64.05. Under the statute, an indigent convicted person intending to file a motion for post-conviction DNA testing has a limited right to appointed counsel to pursue DNA testing. *Ex parte Gutierrez*, 337 S.W.3d 883, 899 (Tex. Crim. App. 2011); *see* Tex. Code Crim. Proc. art. 64.01(c) (stating requirements for appointment of counsel in Chapter 64 post-conviction DNA testing procedure). However, the trial court's decision to deny a request for appointed counsel to assist in filing a motion for post-conviction DNA testing is not an appealable order. *Gutierrez v. State*, 307 S.W.3d 318, 322 (Tex. Crim. App. 2010) (recognizing distinction between "issues that may be litigated on appeal and issues that are immediately appealable"). Rather, the convicted person may appeal any alleged error in the trial court's refusal to appoint counsel in an appeal of the court's denial of the motion requesting DNA testing. *Id.*; *see also Swearingen v. State*, 189 S.W.3d 779, 781 (Tex. Crim. App. 2006) ("The 'appealable order' in this [Chapter 64 proceeding] was the order denying DNA testing.") Accordingly, we dismiss Padilla's appeal of the trial court's order denying appointed counsel for lack of jurisdiction, and, instead, address his complaint about the court's refusal to appoint counsel in his appeal of the trial court's order denying his motion for additional DNA testing.

***The Denial of Motions in 03-12-00301-CR***

Furthermore, while Article 64.05 confers jurisdiction on this Court to review a trial court's order regarding post-conviction DNA testing in any case in which the death penalty is not imposed, we construe the statute as only permitting appeals from an order denying testing or an order related to testing results. *See* Tex. Crim. Proc. Code arts. 64.05 (authorizing appeal "under this chapter"), 64.03 (providing specific requirements that must be met for court to grant post-conviction DNA testing), 64.04 (setting forth trial court's duty to hold hearing and make findings after examining results of testing under Article 64.03); *see also In re Morton*, 326 S.W.3d 634, 639 (Tex. App.—Austin 2010, no pet.) (holding that "in a Chapter 64 proceeding the final order that denies forensic DNA testing, or that makes the required findings following the granting of DNA testing, triggers the running of the notice-of-appeal deadline as to all such orders in the proceeding") (internal citations omitted). The trial court's denial of the five ancillary motions does not fall within the purview of Chapter 64 and is therefore not reviewable on appeal under Article 64.05. *Cf. Wolfe v. State*, 120 S.W.3d 368, 371 (Tex. Crim. App. 2003) (addressing whether, under 2003 version of Article 64.05, appellate court had jurisdiction to review trial court's denial of appellant's request to appoint DNA expert). We find no authority for Padilla to appeal an order concerning motions ancillary to the Chapter 64 proceeding. *See Staley v. State*, 233 S.W.3d 337, 338 (Tex. Crim. App. 2007) ("Appellant does not cite, nor have we found, any constitutional or statutory provision or any rule that would authorize this appeal from the trial court's interlocutory order."); *see also Olowosuko v. State*, 826 S.W.2d 940, 941 (Tex. Crim. App. 1992) ("It is axiomatic that a party may appeal only

that which the Legislature has authorized."). Padilla's appeal of the trial court's April 2, 2012 order denying these motions is not permitted. Accordingly, we dismiss this appeal for lack of jurisdiction.

## POINTS OF ERROR RAISED IN 03-12-00300-CR

In connection with the notice of appeal in 03-12-00300-CR, Padilla raises three points of error. In his first point of error, he again complains that the trial court erred in denying his request for appointed counsel under Article 64.01(c) of the Texas Code of Criminal Procedure. In his second point of error, he maintains that the trial court erred in failing to require the State to comply with its duty under Article 64.02(a)(2) of the Texas Code of Criminal Procedure to deliver the evidence to the court. Finally, in his third point of error, Padilla argues that the trial court erred in denying his motion for additional DNA testing.

## Motion for DNA Testing

Under Texas Code of Criminal Procedure Chapter 64, a convicted person may submit to the convicting court a motion for forensic DNA testing of evidence containing biological material. Tex. Code Crim. Proc. art. 64.01(a). Several requirements must be met in order to obtain DNA testing under Chapter 64 and the convicting court may order forensic DNA testing only if the statutory preconditions are met. *Id.*; *Bell v. State*, 90 S.W.3d 301, 306 (Tex. Crim. App. 2002). "Basic requirements for post-conviction DNA testing are that biological evidence exists, that evidence is in a condition that it can be tested, that the identity of the perpetrator is or was an issue, and that this is the type of case in which exculpatory DNA results would make a difference." *Ex parte Gutierrez*, 337 S.W.3d at 891; *see* Tex. Code Crim. Proc. arts. 64.01, 64.03. A convicted

9

person is not entitled to DNA testing when the testing would "merely muddy the waters." *Ex parte Gutierrez*, 337 S.W.3d at 901 (citing *Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002)).

### Standard of Review

We review a trial court's decision to deny a motion for post-conviction DNA testing under a bifurcated standard of review. *Rivera*, 89 S.W.3d at 59. Under this standard, we afford almost total deference to a trial court's determination of issues of historical fact and its application of the law to fact issues that turn on determinations of witnesses' credibility and demeanor, but we review de novo the trial court's application of the law to fact issues that do not turn on determinations of witnesses' credibility and demeanor. *Routier v. State*, 273 S.W.3d 241, 246 (Tex. Crim. App. 2008). However, where, as here, the trial record and affidavit of appellant are the only sources of information supporting the motion, the trial court is in no better position than we are to make its decision, and we review the issues de novo. *Smith v. State*, 165 S.W.3d 361, 363 (Tex. Crim. App. 2005) (because trial court did not hold live hearing on request for DNA testing, reviewing court would conduct de novo review as trial court was in no better position to determine issues).

### Padilla's Requested Testing

Padilla's second motion for post-conviction forensic DNA testing sought additional testing of biological evidence on the bed sheet where the sexual assault occurred and the vaginal swabs taken from the victim during the sexual assault exam.

First, Padilla sought mitochondrial DNA (mtDNA) testing of the stains on the bed sheet asserting that such testing would demonstrate that the victim's mother was the contributor of the DNA profile of the "unknown individual" contained in the mixture of DNA profiles in two of the semen stains on the sheet. According to Padilla, this evidence would "indicate a sexual encounter between [him] and the [victim's] mother."

Second, Padilla sought additional testing of the victim's vaginal swabs using "newer DNA testing techniques such as DNA 'clean up' procedures." Although he acknowledged that both the STR and Y-STR testing detected no human male DNA—excluding him as a contributor to any biological material from the victim's vaginal swabs—he nevertheless contended that "the DNA 'clean-up' technique could provide more accurate and probative results" which would be exculpatory for him. He asserted that retesting of the swab samples using an alleged "clean up" procedure would identify the minor component of the DNA profile obtained from the vaginal swabs as that of the parasitic organism of the sexually transmitted disease the victim had contracted.[6]

### Subsequent DNA Testing

When requesting testing for evidence that was previously subjected to DNA testing, the convicted person must show that although previously subjected to DNA testing, the evidence can be subjected to testing with newer techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test. *See* Tex. Code Crim. Proc. art.

---

[6] The evidence at trial reflected that a white vaginal discharge collected from the victim during the sexual assault exam at the hospital subsequently tested positive for a sexually transmitted disease (STD). A medical expert testified that the STD, trichomoniasis, is caused by infection with a protozoan parasite called trichomonas vaginalis.

11

64.01(b)(2) (stating requirements for retesting). To meet this burden, the convicted person must provide statements of fact in support of his claims; general, conclusory statements are insufficient. *See Dinkins v. State*, 84 S.W.3d 639, 642 (Tex. Crim. App. 2002).

Padilla sought mtDNA testing of the stains on the bed sheet in an attempt to obtain evidence demonstrating that he had sex with the victim's mother on the bed where the sexual assault occurred. However, the record contains the following information about mtDNA testing:

- mtDNA testing is not appropriate for sexual assault samples, such as the victim's vaginal swabs, which contain profile mixtures because the data cannot be separated by contributor,

- mtDNA does not contain a sex-determining marker so it will not identify the gender of the contributing individual,

- the mode of inheritance of mitochondrial DNA is maternal so all individuals on the maternal side of the family will share the same mtDNA profile, and

- a mtDNA profile is not unique among the population, so the power of discrimination for mtDNA is less than for autosomal STR markers.

Thus, the mtDNA testing Padilla sought would not yield more accurate or probative results than the previously performed STR and Y-STR DNA testing. Nor would it demonstrate that the victim's mother was the "unknown individual" who contributed to the semen stains on the bed sheet because all members of that maternal line, including both the victim and her mother, would share the same mtDNA profile.

Padilla also sought retesting of the victim's vaginal swabs using purported DNA "clean up" techniques. He relies on *Routier v. State* to support his position that such techniques would provide more accurate and probative results. His reliance on *Routier* is misplaced. In

12

*Routier*, a capital murder case where the defendant sought DNA retesting of blood stains on a tube sock recovered at the scene of the murder, the Court of Criminal Appeals held that newer "clean up" procedures that were not available at the time of the previous DNA testing qualified as newer testing techniques referenced in the statute. *Routier*, 273 S.W.3d at 251. However, the record in *Routier* contained evidence that DNA technology had advanced considerably since the time of trial and, further, that the improved "clean up" techniques would make it more likely to yield a result when no results were obtained through the old testing. *Routier*, 273 S.W.3d at 251 & n.33. Here, the opposite is true. The record before the trial court reflected that the most recent DNA testing, performed only the year before Padilla filed his motion, utilized the most current technologies used in the DNA forensics field and that there was no additional testing that would yield better results. Padilla failed to demonstrate that the alleged "clean up" technique was improved over that used in the previous DNA testing.

Padilla further claimed that "clean up" testing on the vaginal swabs would demonstrate that the minor component of the DNA profile obtained from the vaginal swabs was that of the parasitic organism of the sexually transmitted disease the victim had contracted. However, Padilla failed to demonstrate that the "clean up" technique he requested would in fact determine the presence of parasitic DNA. *See Dinkins*, 84 S.W.3d at 642–43 (defendant must do more than simply move for testing of DNA evidence; he must provide facts in support of motion). Moreover, we do not believe the provisions of Chapter 64 entitle Padilla to DNA testing to discover the presence of

13

non-human DNA.  *See Newby v. State*, 229 S.W.3d 412, 415 (Tex. App.—Texarkana 2007, pet. ref'd) (concluding that legislature intended DNA testing to be limited to determining identity of "a person").

Padilla has not shown that newer testing techniques exist that provide "a reasonable likelihood of results that are more accurate and probative" as required for retesting of DNA material. The bare allegations in his motion fail to satisfy this burden.  Furthermore, despite the assertions in his motion, the record demonstrates that the items containing biological material, both the bed sheet and the victim's vaginal swabs, were subjected to the latest and most accurate DNA testing procedures available and, further, that no more accurate or probative results could be achieved with further testing—using either mitochondrial DNA testing or alleged "clean up" techniques. Accordingly, Padilla failed to satisfy the requirement of Article 64.01(b)(2).

### The Identity Issue

Under Article 64.03 of the Code of Criminal Procedure, a convicting court may order forensic DNA testing only if the court finds that identity was or is an issue in the case.  Tex. Code Crim. Proc. art. 64.03(a)(1)(B).  "The identity requirement in Chapter 64 relates to the issue of identity as it pertains to the DNA evidence.  Therefore, if DNA testing would not determine the identity of the person who committed the offense or would not exculpate the accused, then the requirement of Art. 64.03(a)(2)(A) has not been met."  *Leal v. State*, 303 S.W.3d 292, 296 (Tex. Crim. App. 2009) (quoting *Prible v. State*, 245 S.W.3d 466, 470 (Tex. Crim. App. 2008)).

Here, even if mitochondrial DNA testing of the biological material on the bed sheet revealed that the victim's mother was the "unknown individual" who contributed to the semen stains,

14

this evidence would not identify the person who sexually assaulted her daughter or demonstrate that Padilla did not commit the sexual assault. Such evidence would merely demonstrate that Padilla and the victim's mother engaged in consensual sexual intercourse on the bed where Padilla sexually assaulted the victim—evidence that was presented to the jury at trial through the mother's testimony.

In addition, contrary to Padilla's claims, further testing of the vaginal swabs would not identify who committed the sexual assault or provide additional exculpatory evidence. The record reflects that the unidentified minor component of the mixture obtained from the vaginal swabs contained a low number of alleles, a number below the lab's threshold for comparison. Thus, the sample yielded only a partial DNA profile that was not capable of comparison. There was no competent DNA profile from which to identify the contributor and the record before the trial court demonstrated that further testing would not change that result. Second, even if further testing could somehow identify parasitic DNA, as Padilla suggests, this would not identify the assailant or exculpate Padilla. Evidence of the existence of the trichomonas parasite would merely indicate that the victim had contracted trichomoniasis. As Padilla acknowledges, evidence of the victim's STD was presented to the jury at trial. He fails to demonstrate how the presence of this STD identifies the perpetrator or exculpates him.

Because the testing Padilla sought would not determine the identity of the perpetrator or exculpate Padilla, he failed to satisfy the identity requirement of Article 64.03(a)(1)(B). Thus, we cannot say that the trial court erred in concluding that identity was not an issue in this case.

15

***Reasonable Probability of Different Result***

DNA testing is required only if "the convicted person establishes by a preponderance of the evidence that the person would not have been convicted if exculpatory results had been obtained through DNA testing." Tex. Code Crim. Proc. art. 64.03(a)(2)(A); *see State v. Holloway*, 360 S.W.3d 480, 483 (Tex. Crim. App. 2012). This means that a convicted person is not entitled to DNA testing unless he first shows that there is "'greater than a 50% chance that he would not have been convicted if DNA testing provided exculpatory results[.]'" *Ex parte Gutierrez*, 337 S.W.3d at 899 (quoting *Prible*, 245 S.W.3d at 467–68). Here, even if identity had been at issue, the record supports the conclusion that Padilla failed to satisfy his burden of showing that exculpatory results would have altered the outcome of his trial.

Padilla wholly failed to demonstrate how the presence of some third party's DNA—either that of the victim's mother or that of the STD parasite—would exonerate him. Even if some biological evidence belonging to the victim's mother were discovered on the bed sheet or that of some parasite were identified on the victim's vaginal swabs, such evidence would not prove by a preponderance of the evidence that Padilla did not commit aggravated sexual assault upon the victim. Padilla's bare assertions that the biological samples in question might belong to someone else are not sufficient to show innocence. *See Prible*, 245 S.W.3d at 470 ("[E]ven if the evidence was retested and determined to contain another person's DNA in addition to Appellant's DNA, it would not establish by preponderance of the evidence that Appellant would not have been convicted if the jury had heard that DNA from a third-party was present."); *Bell*, 90 S.W.3d at 306 ("The presence of another person's DNA at the crime scene will not, without more, constitute affirmative

16

evidence of appellant's innocence."). The requested DNA testing must tend to prove the defendant's innocence. *Rivera*, 89 S.W.3d at 59 (citing *Kutzner v. State*, 75 S.W.3d 427, 439 (Tex. Crim. App. 2002)); *see Jacobs v. State*, 115 S.W.3d 108, 113 (Tex. App.—Texarkana 2003, pet. ref'd) (DNA testing must conclusively outweigh all other evidence of convicted person's guilt).

For the same reason that identifying the victim's mother as the "unknown individual" who contributed to the semen stains on the bed sheet fails to raise the issue of identity, such evidence also fails to prove by a preponderance of the evidence that Padilla did not sexually assault the victim: the evidence merely shows that at some point Padilla and the victim's mother engaged in sexual activity on the bed. Further, identifying the minor component of the vaginal swab as trichomonas DNA simply corroborates the fact that the victim had an STD and does not tend to prove Padilla's innocence. Moreover, Padilla was already excluded as a contributor to the biological evidence on the vaginal swabs by prior DNA testing. Under the circumstances, neither the presence of the victim's mother's DNA on the bed sheet nor the presence of parasitic DNA on the vaginal swabs would be exculpatory or establish by a preponderance of the evidence that Padilla would not have been convicted. Chapter 64 proscribes testing if it would not result in exculpatory evidence that would have altered the outcome of the trial. *Prible*, 245 S.W.3d at 469.

"The bottom line in post-conviction DNA testing is this: Will this testing, if it shows that the biological material does not belong to the defendant, establish, by a preponderance of the evidence, that he did not commit the crime as either a principal or a party?" *Ex parte Gutierrez*, 337 S.W.3d at 900. Based on our review of the record, we cannot conclude that the trial court erred

17

in answering this question in the negative. Padilla failed to satisfy the exoneration requirement of Article 64.03(a)(2)(A).

*Conclusion Regarding Request for DNA Testing*

The convicting court may order forensic DNA testing only if the statutory requirements under Chapter 64 are met. Tex. Code Crim. Proc. art. 64.03(a); *Bell*, 90 S.W.3d at 306. In this case, Padilla was required to show that (1) newer testing techniques provided a reasonable likelihood of more accurate and probative results than the previous DNA testing, (2) identity was or is an issue in the case, and (3) there is greater than 50% chance that he would not have been convicted if DNA testing provided exculpatory results. *See* Tex. Code Crim. Proc. arts. 64.01(b)(2), 64.03(a)(1)(B), (a)(2)(A). Padilla failed to satisfy these statutory requirements. Thus, we conclude that the convicting court did not erroneously deny his motion for additional post-conviction forensic DNA testing. Padilla's third point of error is overruled.

**Appointment of Counsel**

In his first point of error, Padilla contends that the trial court erred by refusing to appoint counsel to assist him in seeking additional post-conviction forensic DNA testing.

An indigent convicted person intending to file a motion for post-conviction DNA testing has a limited right to appointed counsel. *Ex parte Gutierrez*, 337 S.W.3d at 889; *see* Tex. Code Crim. Proc. art. 64.01(c) (stating requirements for appointment of counsel). Appointment of counsel in a Chapter 64 proceeding is determined by three criteria: (1) the defendant must inform the convicting court that he wishes to submit a motion for DNA testing; (2) the convicting court

18

must find that "reasonable grounds" exist for filing a DNA motion; and (3) the convicting court must find that the movant is indigent. *Gutierrez*, 307 S.W.3d at 321.

Though a convicted person need not prove entitlement to DNA testing as a precondition for obtaining appointed counsel, whether "reasonable grounds" exist for testing necessarily turns on what is required for testing. *Ex parte Gutierrez*, 337 S.W.3d at 891; *see Lewis v. State*, 191 S.W.3d 225, 227–28 (Tex. App.—San Antonio 2005, pet. ref'd) (statute requires only showing of "reasonable grounds" for motion to be filed, not establishment of "prima facie" case). Entitlement to appointed counsel is conditioned on the trial judge's finding that reasonable grounds exist for the filing of a motion for post-conviction DNA testing. Thus, "[b]efore appointing an attorney, the trial judge needs "reasonable grounds" to believe that (1) a favorable forensic test is a viable, fair, and rational possibility, and (2) such a test could plausibly show that the [convict] would not have been convicted." *Ex parte Gutierrez*, 337 S.W.3d at 891–92; *see In re Franklin*, No. 03-07-00563-CR, 2008 WL 2468712, at *2 (Tex. App.—Austin June 19, 2008, no pet.) (mem. op., not designated for publication) ("[R]easonable grounds for a testing motion are present when the facts stated in the request for counsel or otherwise known to the trial court reasonably suggest that a plausible argument for testing can be made. Conversely, reasonable grounds for a testing motion are not present if the record before the trial court shows that DNA testing is impossible or that no viable argument for testing can be made.").

As discussed earlier, we have already concluded that Padilla failed to satisfy the statutory requirements of Articles 64.01 and 64.03. Thus, Padilla does not have "reasonable grounds" to file a motion for additional DNA testing. *See Lewis*, 191 S.W.3d at 228–29 ("If a

convicted person who bears the burden of satisfying the requirements of Chapter 64 fails to meet the preconditions to obtaining post-conviction DNA testing, he has failed to set forth reasonable grounds to file a motion and, therefore, is not entitled to the appointment of counsel."). Consequently, we find that the trial court's decision to deny Padilla's third request for appointed counsel was not error. *See In re Ludwig*, 162 S.W.3d 454, 455 (Tex. App.—Waco 2005, no pet.) (even if convicting court determines that convicted person is indigent, court would not be required to appoint counsel if it found there were no reasonable grounds for motion for forensic DNA testing to be filed). We overrule Padilla's first point of error.

## Failure to Deliver Evidence

In his second point of error, Padilla contends that the trial court erred by failing to require the State to fulfill its duty to turn over possession of the items to be tested to the trial court. Padilla correctly points out the statute's requirement that, on receipt of a motion seeking post-conviction DNA testing, the trial court is to direct the State either to deliver the evidence to the court, along with a description of the condition of the evidence, or to explain why the State cannot. *See* Tex. Code Crim. Proc. art. 64.02(a)(2). However, the statute specifically allows the trial court to proceed even when the State fails to file a response. *Id.* art. 64.02(b); *see also Sepeda v. State*, 301 S.W.3d 372, 375 (Tex. App.—Amarillo 2009, pet. ref'd) (noting that Article 64.02(b) "allows the trial court to proceed after the response period expires and regardless of whether the State filed a response"). Further, there is no harm to Padilla from any failure to deliver the evidence because the trial court did not deny Padilla's request for additional DNA testing on the basis of the evidence's condition, its ability to be tested, or its non-delivery. Moreover, because Padilla is not entitled to

20

subsequent DNA testing under Articles 64.01 and 64.03, as we have held above, the failure to follow Article 64.02's procedural steps is harmless.

We conclude that any failure to follow Article 64.02(a)(2) was harmless and does not entitle Padilla to the additional DNA testing he sought. We overrule Padilla's second point of error.

## CONCLUSION

Having overruled Padilla's three points of error, we affirm the trial court's order denying his motion for additional DNA testing. Because an order denying appointed counsel under Article 64.01(c) is not an appealable order, we do not have jurisdiction to consider Padilla's claim that the trial court erred in denying his request for appointed counsel in a separate appeal. We dismiss this appeal for want of jurisdiction. Finally, finding no authority for Padilla to appeal the trial court's order denying motions ancillary to the Chapter 64 proceeding, we dismiss the appeal of that order for want of jurisdiction.[7]

---

[7] Padilla has filed several pro se motions with this Court in connection with these appeals. In light of our disposition of these appeals, we dismiss Padilla's pro se motions as moot.

21

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Rose and Goodwin

03-12-00300-CR      Affirmed

03-12-00299-CR      Dismissed for Want of Jurisdiction

03-12-00301-CR      Dismissed for Want of Jurisdiction

Filed:   June 20, 2013

Do Not Publish