ACCEPTED
03-14-00328-CR
4102522
THIRD COURT OF APPEALS
AUSTIN, TEXAS
2/11/2015 9:48:04 AM
JEFFREY D. KYLE
CLERK

## No. 03-14-00328-CR

_____

# IN THE COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
2/11/2015 9:48:04 AM
JEFFREY D. KYLE
Clerk

_____

### ISREAL REYES SR., Appellant

v.

### THE STATE OF TEXAS, Appellee

_____

On Appeal from the 207th Judicial District Court of Comal County, Texas
Cause No. CR2012-427
Honorable Jack Robison, District Judge Presiding

_____

## BRIEF FOR THE STATE

_____

**Jennifer Tharp**
**Criminal District Attorney**

**By**
**Christine Rankin**
**SBN: 24044716**
**Assistant District Attorney**
**150 N. Seguin Avenue, Suite #307**
**(830) 221-1300**
**Fax (830) 608-2008**
**New Braunfels, Texas 78130**
**E-mail: rankic@co.comal.tx.us**
**Attorney for the State**

## Oral Argument Is Requested

i

## IDENTITY OF PARTIES AND COUNSEL

Appellant – Isreal Reyes Sr.

Appellee – The State of Texas

**Attorneys for the Appellant**

Joseph Garcia
200 N. Seguin
San Antonio, TX 78130
For the Appellant at Trial

Richard Wetzel
1411 West Avenue, Suite 100
Austin, TX 78701
For the Appellant on Appeal

**Attorneys for the Appellee**

Christine Rankin
Assistant Criminal District Attorney
Comal County Criminal District Attorney's Office
150 N. Seguin Avenue, Suite 307
New Braunfels, Texas 78130
Attorney for the State at Trial and on Appeal

# Table of Contents

Identity of Parties and Counsel ................................................................. ii

Table of Contents ................................................................................... iii

Index of Authorities ................................................................................. v

Statement of the Case ............................................................................... 1

Statement of Facts ................................................................................... 2

THERE IS SUFFICIENT EVIDENCE TO SHOW THAT APPELLANT
THREATENED THE COMPLAINANT WITH IMMINENT BODILY INJURY ..7

    Summary of the Argument .................................................................. 7

    *Standard of Review* .......................................................................... 7

    *Authorities* .................................................................................... 10

    Argument ....................................................................................... 11

THERE WAS SUFFICIENT EVIDENCE OF CR2012-428 AND APPELLANT'S
LINK TO THAT CASE AS THE PERSON CONVICTED.. ............................. 15

    Summary of the Argument ................................................................ 15

    *Authorities* .................................................................................. 16

    Argument ...................................................................................... 17

    *Evidence of Appellant's Prior Conviction in CR2012-428* ................. 17

    *Judicial Notice of CR2012-428* ....................................................... 25

THE JUDGMENT IS VALID UNDER *WILLIAMS V. STATE* ..............................30

    Summary of the Argument...................................................30

    Authorities ................................................................30

    Argument....................................................................32

THE COURT SHOULD REFORM THE JUDGMENTS TO REFLECT THE APPELLANT'S "NOT GUILTY" PLEAS ............................................35

    Summary of the Argument...................................................35

    Argument....................................................................35

Prayer ...........................................................................36

Certificate of Service ...........................................................37

Certificate of Compliance ........................................................37

iv

# Index of Authorities

## Statutes & Rules

23 Tex. Jur. 2d, Evidence, Sec. 298, p.51 ..................................................................25

24 Tex. Jur. 3d, Crim. Law, § 2980, p. 155 ...............................................................25

35 Tex. Jur. 3d, Evidence, § 63, p. 109 .......................................................................25

Tex. Code Crim. Proc. Ann. 42.08 .......................................................................1, 26

Tex. Code Crim. Proc. Ann. 36.13 ...............................................................................8

Tex. Penal Code Ann. §22.02 .......................................................................................1

Tex. Penal Code Ann. §46.03 ........................................................................................1

Tex. R. Evid. 201 ........................................................................................................25

## Cases

*Baker v. State,* 187 S.W. 949 (1916) ........................................................................25

*Banks v. State,* 708 S.W.2d 460 (Tex. Crim. App. 1986).....................................31, 32

*Bridges v. State,* 468 S.W.2d 451 (Tex. Crim. App. 1971) ......................................33

*Calloway v. State,* 240 S.W. 553 (1922).....................................................................25

*Cortez v. State*, 08-02-00363-CR, 2004 WL 178587
(Tex. App.—El Paso Jan. 29, 2004, pet. ref'd).............................................................9

*Druery v. State*, 225 S.W.3d 491 (Tex. Crim. App. 2007)...........................19, 22, 27

*Dunn v. State,* 242 S.W. 1049 (1922) .........................................................................25

*Ervin v. State,* 331 S.W.3d 49 (Tex. App.—Houston
[1st Dist.] 2010, pet. ref'd) ..................................................................................8

*Goodman v. State*, 66 S.W.3d 283 (Tex. Crim. App. 2001)......................................9

*Hardison v. State,* 450 S.W.2d 638 (Tex.Cr.App.1970)..........................................25

*Jackson v. Virginia*, 443 U.S. 307 (1979)................................................................8

*Jacobs v. State,* 294 S.W.3d 192 (Tex. App.-Texarkana
2009, pet. ref'd) ...................................................................................................26

*Kiffe v. State*, 361 S.W.3d 104 (Tex. App.—Houston
[1st Dist.] 2011, pet. ref'd)..........................................................................8, 9, 15

*Kubosh v. State*, 241 S.W.3d 60 (Tex. Crim. App. 2007) .................................25, 26

*Lane v. State*, 174 S.W.3d 376 (Tex. App.—Houston
[14th Dist.] 2005, pet. ref'd) ................................................................................9

*Laster v. State*, 275 S.W.3d 512 (Tex. Crim. App. 2009) .........................................9

*Olivas v. State,* 203 S.W.3d 341 (Tex. Crim. App. 2006) .....................10, 11, 13, 14

*Margraves v. State*, 34 S.W.3d 912 (Tex. Crim. App. 2000) ....................................9

*McGowan v. State*, 664 S.W.2d 335 (Tex. Crim. App.
1984) ...............................................................................................................10, 17

*Miller v. State,* 33 S.W.3d 257 (Tex. Crim. App. 2000) ........................16, 17, 24, 25

*Mungaray v. State,* 188 S.W.3d 178 (Tex. Crim. App.
2006) .........................................................................................................16, 17, 24

*Splawn v. State,*160 S.W.3d 103 (Tex. App. – Texarkana
2005, pet. ref'd)....................................................................................................35

*State v. Gray,* 158 S.W.3d 465 (Tex. Crim. App. 2005) ...........................................16

*State v. Ross,* 32 S.W.3d 853 (Tex. Crim. App. 2000) ..............................................16

*Turner v. State,* 733 S.W.2d 218 (Tex. Crim. App. 1987) ...................................................................................................24

*Vennus v. State*, 282 S.W.3d 70 (Tex. Crim. App. 2009) ...................................................................................................28

*Watenpaugh v. State Teacher's Retirement System*, 51 Cal.2d 675 (1959) .....................................................................................27

*Ward v. State,* 523 S.W.2d 681 (Tex. Crim. App. 1975) ................................................................. 16, 24, 30, 31, 32, 33, 34

*Watkins v. State,* 245 S.W.3d 444 (Tex. Crim. App. 2008) ...................................................................................................33

*Williams v. State,* 675 S.W.2d 754 (Tex. Crim. App. 1984) ..............................................................................30, 31, 32,33

*Wilson v. State,* 677 S.W.2d 518 (Tex.Cr.App.1984)..............................................25

## STATEMENT OF THE CASE

On September 12, 2012, in Cause Number CR2012-427 in the 207th Judicial District Court of Comal County, Texas, the Grand Jury returned a two count indictment against Appellant, Isreal Reyes Sr. Count I of the indictment charged Appellant with aggravated assault with a deadly weapon, a second degree felony with a range of punishment from two to twenty years in prison. Count II of the indictment charged appellant with unlawful possession of a firearm, a third degree felony, with a range of punishment of two to ten years in prison. CR at 6; Tex. Pen. Code §22.02 and §46.03.

On April 2, 2014, a jury found Appellant guilty of both offenses of aggravated assault with a deadly weapon and unlawful possession of a firearm as alleged in the indictment. CR at 44-73; RR Vol. IV at 4.

Prior to trial, Appellant had elected for the court to assess his punishment in the event he was convicted. RR. Vol. II at 7. On May 19, 2014, the court heard punishment evidence. RR. Vol. IV at 1. After hearing evidence and arguments of counsel on punishment, the court assessed Appellant's punishment for Count I at a term of ten years in the Institutional Division of the Texas Department of Criminal Justice to run consecutive with the sentence imposed in CR2012-428. The court assessed punishment for Count II at a term of five years in the Intuitional Division of the Texas Department of Criminal Justice to run concurrent with the sentences

1

imposed in CR2012-428. CR at 44-73, RR Vol. V at 75. On May 19, 2014, those sentences were imposed in open court. RR. Vol. V at 75.

Appellant had previously been tried in CR2012-428 approximately seven months prior to trial in the instant case. Appellant's trial in CR2012-428 was held in the same court, before the same judge, and with the same attorneys for the State and the defense. In that case, the jury found Appellant guilty of a first degree felony, aggravated assault with serious bodily injury against a family member, and two third degree felonies, endangering a child and unlawful possession of a firearm. RR. Vol. III at 170, State's Exhibits 28-30. The jury sentenced Appellant to twenty years and ten years confinement in the Texas Department of Criminal Justice, respectively.

Appellant timely filed a notice of appeal. CR at 42. Appellant now seeks an acquittal for his judgment in count I, aggravated assault with a deadly weapon. Appellant's Brief at 11. Appellant also seeks reformation of the judgment cumulating his sentences. Appellant's Brief at 16.

## STATEMENT OF FACTS

On January 15, 2012, Billie Jean McCann and Appellant resided together in Comal County, Texas. Their residence was an RV travel trailer with a kitchen and a bedroom. State's Exhibit 1A at 2:00. The two were in a dating relationship and McCann was pregnant with Appellant's child. RR. Vol. II at 203-4.

2

When McCann came home from a birthday party on January 15, 2012, she and Appellant began arguing. They were the only two residents in the home that afternoon. RR. Vol. III at 74,86-87. Each accused the other of infidelities. RR. Vol. III at 86, 96. Appellant was particularly upset over his airbrush gun and blamed McCann for ruining it. State's Exhibit 1A at 2:10. Appellant felt that McCann had purposely distracted him from cleaning the airbrush gun earlier in the week. *Id.*

During this argument, Appellant sat at the kitchen table with a loaded .38 caliber revolver in his lap. *Id.* at 4:00. McCann was laying in bed roughly five feet from Appellant. State's Exhibit 21 at 41:00; RR. Vol. III at 76; RR. Vol. V at 60. Appellant's anger was escalating as the loaded gun sat in his lap. State's Exhibit 1A at 4:00. At some point during their argument, Appellant picked up the .38 with one hand. RR. Vol. V at 60. He then pulled the trigger, firing the gun and hitting the bedpost of the bed where McCann lay. *Id.*; State's Exhibit 1A at 5:00; State's Exhibit 21 at 41:00. Appellant acknowledged that the gun firing was not accidental. RR. Vol. V at 60. McCann, who was not yet asleep when Appellant shot at her, heard the shot ring out. RR. Vol. III at 74-5, 86-7. After the bullet struck the bedpost, Appellant blamed his actions on McCann by saying she provoked him. State's Exhibit 1A at 5:00.

McCann was in fear and scared immediately after Appellant shot at her. RR. Vol. III at 65-6; State's Exhibit 22 at 41:00. She believed he had shot at her to

3

scare her. RR. Vol. III at 64. She told Appellant that shooting at the bed she was sleeping in was the same as shooting at her. State's Exhibit 22 at 41:00. She then ran to her mother's house. RR. Vol. III at 104.

In the days following the shooting, McCann's mother, Deidra McCann, confronted Appellant for shooting at her daughter and for having firearms in the residence. *Id*. Deidra McCann assisted her daughter with completely moving out of Appellant's RV. *Id*. She was aware of Appellant's history of verbal arguments and wanted McCann to move away from Appellant and focus on her pregnancy. *Id* at 110, 127.

McCann eventually reconciled with Appellant and the two continued their dating relationship. The relationship was on-again-off-again and the two argued more over accusations of cheating. State's Exhibit 21 at 24:00. One night in June of 2012, Appellant's anger escalated to rage. McCann had moved out again and was now nine months pregnant. He made threats to kill her and burn down the residence where she was staying. *Id*. at 27:00. He threatened to kill her if she did not leave her cell phone for him in the mailbox. *Id*. at 29:00.

However, McCann did not leave her cell phone in the mailbox as ordered. Appellant drove to her residence and another argument ensued. Appellant continued to make threats to kill both McCann and her dog. *Id*. at 30:00. On this occasion, Appellant was carrying a loaded silver Colt .38 revolver with a modified

4

handle. *Id*. at 38:00. During his argument with McCann, Appellant fired the pistol in her direction. *Id*. at 30:00. The bullet struck McCann's face and she screamed for her sister to call for help. *Id*. She was rushed to the hospital for treatment of her injuries and to deliver her child. RR. Vol. II at 203-04.

Detective Rex Campbell of the Comal County Sherriff's Office met McCann at the hospital to investigate both shootings. *Id*. CPS also opened an investigation led by Melinda Hernandez. State's Exhibit 21 at 24:00. Campbell and Hernandez interviewed McCann at the hospital and recorded their conversations. State's Exhibit 21, 22. RR. Vol. III at 53, 65.

After interviewing McCann, Campbell obtained an arrest warrant for Appellant. RR. Vol. II at 204. That warrant was executed June 18, 2012 at Appellant's residence on 1078 Scenic Run. *Id*. at 204-05. The SWAT team assisted in the execution of the arrest warrant because law enforcement believed that Appellant intended to commit suicide by cop based on postings Appellant had made on Facebook. RR. Vol. V at 14, 34; State's Exhibits 65-67. During the execution of the warrant, a Colt .38 revolver, along with ammunition, was recovered from the residence. RR. Vol. II at 204-05; RR. Vol. V at 40.

Campbell and Hernandez interviewed Appellant after he was apprehended. State's Exhibit 1A, 2A. He confessed to shooting at McCann in January of 2012 and June of 2012. RR. Vol. V at 53. They discussed his methamphetamine habit,

5

his arrest and conviction from Hildago County, and his gang affiliation. *Id*. at 27-30, 49-52; State's Exhibits 62, 63.

In October of 2013, Appellant was tried and convicted for shooting McCann in the face under cause number CR2012-428. State's Exhibits 27-30. Appellant was a felon at the time of both offenses because of his prior burglary conviction out of Hildago County, Texas. RR. Vol. III at 133; State's Exhibit 26. Appellant pled guilty to the charge of unlawful possession of a firearm. State's Exhibit 27. The jury assessed Appellant's punishment at twenty years confinement in the Texas Department of Criminal Justice for the offense of aggravated assault with a deadly weapon against a family member. State's Exhibit 29. He was sentenced to ten years confinement for endangering a child and unlawful possession of a firearm, as alleged in Counts II and III of the indictment in that case. State's Exhibits 28, 30.

The trial in the instant case, CR2012-427, began on March 31, 2014. RR. Vol. I at 1. The jury returned a verdict of guilty on Counts I and II of the indictment. CR 36, 38; RR. Vol. IV at 4. During the trial on punishment to the court, Appellant testified about both shootings, his gang affiliation, his methamphetamine abuse, and his Facebook posts. RR. Vol. V at 44-54. He also testified about the firearms confiscated from his residence. *Id*. at 56.

After Appellant testified, both sides rested and closed. *Id*. at 67. On Count I, the trial court sentenced Appellant to ten years confinement in prison to run consecutive with his sentence in CR2012-428. *Id*. at 75. He was sentenced to five years incarceration on Count II to run concurrent with all other sentences. *Id*.

## THERE IS SUFFICIENT EVIDENCE TO SHOW THAT APPELLANT THREATENED THE COMPLAINANT WITH IMMINENT BODILY INJURY

### Summary of the Argument

In his first point of error, Appellant argues that the evidence is insufficient to prove that Appellant threatened the complainant with imminent bodily injury. Appellant's Brief at 7.  Appellant incorrectly asserts that the State failed to present evidence of Appellant's threat towards McCann. *Id*. His argument then rests solely on the claim that McCann did not see Appellant with the pistol and did not see him point the pistol in her direction. *Id*. However, there was ample evidence presented to the factfinder to show a perceived threat consistent with *Olivas v. State*.

### Standard of Review

It is well established in the State of Texas that the jury is the exclusive judge of the facts in a particular case, that the jury receives the law from the court, and that the jury is governed by the law received from the court. Tex. Code Crim. Proc. Ann. art. 36.13 (Vernon's 1981).

After the decision of the Court of Criminal Appeals in *Brooks v. State*, Texas appellate courts review legal and factual sufficiency challenges in criminal cases using the same legal sufficiency standard of review. *Kiffe v. State*, 361 S.W.3d 104, 107 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (citing *Ervin v. State,* 331 S.W.3d 49, 54 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd)). Evidence is only insufficient if, when considering all the evidence in the light most favorable to the verdict, "no rational factfinder could have found each essential element of the charged offense beyond a reasonable doubt." *Id*. (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). While viewing the evidence in the light most favorable to the verdict, evidence can be insufficient in two circumstances: when the record contains "no evidence, or merely a 'modicum' of evidence, probative of an element of the offense" **or** when "the evidence conclusively establishes a reasonable doubt." *Id*. The evidence may also be insufficient when the acts alleged do not constitute the offense charged. *Id*. at 108.

Legal sufficiency review "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. at 319. Reviewing courts determine whether the necessary inferences are reasonable based on the "combined and cumulative force of the evidence when viewed in the light most favorable to the verdict." *Kiffe*, 361 S.W.3d at 108. Courts

8

will treat direct and circumstantial evidence equally. *Id.* "[D]irect evidence of a fact, standing alone and if believed by the jury, is always… sufficient to prove that fact." *Cortez v. State*, 08-02-00363-CR, 2004 WL 178587, at *3 (Tex. App.—El Paso Jan. 29, 2004, pet. ref'd) (citing *Goodman v. State*, 66 S.W.3d 283, 286 (Tex. Crim. App. 2001)); *see also Lane v. State*, 174 S.W.3d 376, 386 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (testimony of a child victim, standing alone, is sufficient to support aggravated sexual assault conviction). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Kiffe,* 361 S.W.3d at 105. Appellate courts will presume that the factfinder "resolved any conflicting inferences in favor of the verdict" and defer to that resolution. *Id.* The reviewing courts will also defer to "the factfinder's evaluation of the credibility and the weight of the evidence." *Id.* The factfinder is entitled to accept some testimony and reject other testimony, in whole or in part. *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000), abrogated on other grounds by *Laster v. State*, 275 S.W.3d 512 (Tex. Crim. App. 2009).

## Authorities

In the context of assault by threat, the law requires some evidence of a threat, while not necessarily requiring a victim to instantaneously perceive the threat as the actor is performing it. *Olivas v. State*, 203 S.W. 3d. 341, 348 (Tex. Crim. App. 2006).

In *Olivas*, the Court looked at how the word "threatened" was defined in Webster's Dictionary, since the penal code fails to define it. *Id*. at 345. From analyzing the various definitions of the word threat, the Court then concluded that a threat occurs when an "actor utters the threatening words or otherwise initiates the threatening conduct" and not necessarily when an alleged victim perceives the threat. *Id*. The Court next addressed the act of "threatening" in the criminal context to determine whether the lower appellate court ruled correctly when it found the evidence insufficient because the victim did not perceive a threat when the appellant fired the shots at her vehicle. *Id*. at 347. The Court distinguished *Olivas* from *McGowan v. State,* where no evidence was presented of any threat before the aggravated assault. *Id*. (citing *McGowan v. State*, 664 S.W.2d 335 (Tex. Crim. App. 1984)).

After defining what it meant to "threaten" and distinguishing the case from *McGowan*, the Court analyzed whether there was any legally sufficient evidence presented to show the victim perceived a threat. *Id*. at 349. The Court focused on

the evidence presented at trial showing the victim felt threatened by the appellant on numerous occasions leading up to the charged offense. *Id*. The Court then outlined the events which had an impact on the victim's state of mind to conclude the victim had in fact perceived a threat when the appellant shot her truck. *Id*. at 350. The Court also focused on events which occurred on the evening of the shooting in concluding that there was in fact "ample evidence" that the victim perceived a threat, despite not seeing the appellant discharge the firearm. *Id*. Specifically, the evidence showed that the victim heard the firearm discharge at her vehicle, looked at her vehicle to determine what had struck her vehicle, called law enforcement after observing bullet holes in her truck, and was placed in fear by appellant's actions. *Id*. The Court reversed the judgment of the appellate court concluding that "there is no statutory requirement that a victim must instantaneously perceive or receive [the] threat of imminent bodily injury as the actor is performing it" *Id*. at 350-51.

**Arguments**

The fact scenario in *Olivas* closely parallels that in the instant case. While McCann did not see Appellant point the firearm in her direction or discharge the firearm, there is ample evidence of a perceived threat under the *Olivas* rationale. The facts and circumstances surrounding the shooting clearly show that McCann perceived a threat.

At trial, the jury heard evidence of the tumultuous relationship between Appellant and McCann. The jury heard about the numerous occasions Appellant had threatened McCann and how angry and upset he was with her on January 15, 2012. State's Exhibits 21, 22; RR. Vol. III at 65. McCann told Hernandez and Campbell that she and Appellant were in an argument before he shot at her. RR. Vol. III at 86, 96; State's Exhibits 21, 22. Evidence was presented that McCann was laying in a bed roughly five feet from Appellant when he discharged the firearm. RR. Vol. V at 60. Furthermore, by his own admissions, Appellant was angry with McCann at the time he pulled the trigger on the .38 revolver. RR. Vol. III at 86; RR. Vol. V at 56, 60.

Appellant was furious with McCann because he believed she was responsible for ruining his airbrush gun. RR. Vol. III at 86. Appellant also believed that McCann was cheating on him and was angry about her leaving the house to go to a party with her cousin. *Id*. at 96.

During the argument, Appellant had the .38 revolver on his lap. RR. Vol. V at 59. Although he claimed that the revolver was only there for protection from members of the Texas Syndicate who were after him for money, the factfinder could easily infer that he used the gun on his lap during a fight with his unarmed wife to show force and threaten her. *Id*. at 61. The argument over cheating and Appellant's claim that McCann had ruined his airbrush gun, along with his anger

12

and his display of the firearm, clearly demonstrated a threat before Appellant actually pulled the trigger.

Appellant described himself as being at his breaking point and exploding when he fired the shot. Although Appellant at trial tried to claim McCann was sleeping when the shot was fired, McCann testified that she was awake and heard the shot. RR. Vol. III at 74. Similarly in *Olivas*, the victim heard shots that sounded like rocks hitting her car. *Olivas*, 203 S.W. 3d. at 350. Only later, when the victim observed bullet holes in the vehicle, did the victim realize that the sounds she heard were gunshots. *Id*. Here, McCann knew Appellant had a firearm. She heard the gunshot when Appellant fired the weapon, and recognized the sound as a gunshot. RR. Vol. III at 74. She was also aware that the bullet hit the bedpost of the bed she was lying in. *Id*. at 75. In this case and *Olivas*, both victims testified that they did not see the gun pointed at them or in their direction when the gun was fired. Nevertheless, in *Olivas*, the Court still held that the victim "did perceive the threat made by appellant at the time the offense occurred" *Id*. If the victim in *Olivas* was found to have perceived the appellant's threat – though not knowing until sometime later that the sounds she heard were gunshots – McCann clearly perceived the threat when she heard the gunshot and instantly knew that the bullet hit the post of her bed.

The circumstances after Appellant shot at McCann show further evidence of a threat. Just like the victim in *Olivas*, McCann was frightened and scared after Appellant shot at her. RR. Vol. III at 65. Alarmed, she looked directly at the Appellant and immediately confronted him for shooting at her. RR. Vol. III at 76. She was clearly frightened enough by the shot to run to her mother's house, disclose what Appellant had done, and contemplate moving away from Appellant. Her alarmed mother also confronted Appellant about having guns in the residence with her pregnant daughter. RR. Vol. III at 104.

Months after Appellant threatened her with a deadly weapon as she lay in bed, Appellant shot at her again, this time hitting her in the face. RR. Vol. III at 92. Appellant's shooting in McCann's direction was not an isolated event. The jury in this case heard about Appellant shooting at McCann in June of 2012 when she was nine months pregnant. On that occasion, where the two were having an argument, Appellant threatened to kill McCann and burn down her sister's residence.

Because the facts in Appellant's case parallel – and in some instances, exceed – those found sufficient by the Court of Criminal Appeals in *Olivas v. State*, there was legally sufficient evidence that Appellant threatened McCann. When viewing the combined and cumulative force of the evidence in the light most favorable to the verdict, the facts and circumstances before, during, and after

14

Appellant shot at McCann were legally sufficient to prove Appellant's guilt, and Appellant's first point of error should be denied.

## THERE WAS SUFFICIENT EVIDENCE OF CR2012-428 AND APPELLANT'S LINK TO THAT CASE AS THE PERSON CONVICTED

### Summary of the Argument

In his second point of error, Appellant complains that the court's order cumulating his sentence for Count I in CR2012-427 with his sentence in CR2012-428 is invalid. Appellant's Brief at 11. He asserts that there is a lack of evidence of the CR2012-428 conviction and a lack of evidence that Appellant was the person convicted in that cause number. *Id.* He claims that "no record evidence of a prior conviction in CR2012-428 was offered." *Id.* at 14.

However, contrary to Appellant's arguments, the cumulation order in the instant case is valid and should be affirmed. First, the cumulation order was entered in the same court and pronounced by the same presiding judge as the sentences to which it is made cumulative. Second, there is ample evidence in the record of the prior conviction in CR2012-428. Third, the record contains sufficient evidence that Appellant is the same person convicted and sentenced in CR2012-428.

## Authorities

Courts must sustain the trial court's decision if it is correct on any theory of law applicable to the case. *State v. Gray*, 158 S.W.3d 465, 467 (Tex. Crim. App. 2005) (also noting appellate courts will "view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record") (citing *State v. Ross*, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000)).

The trial court, in its discretion, may cumulate sentences in accordance with Tex. Crim. Proc. Code Art. 42.08. Typically, the courts have required some evidence of the prior conviction to validate the cumulation order. *Ward v. State,* 523 S.W.3d 682 (Tex. Crim. App. 1975); *Miller v. State*, 733 S.W.2d 218 (Tex. Crim. App. 1987); *Mungaray v. State*, 188 S.W.3d 178 (Tex. Crim. App. 2006). As explained in *Miller v. State*, all that is required is that some evidence be put before the court of a previous conviction along with evidence linking the defendant with that previous conviction. 733 S.W.2d at 221.

In *Miller*, the Court validated the cumulation order made by the trial judge. *Miller*, 33S.W.3d at 262. The Court utilized the whole record to find sufficient evidence of the prior conviction and sufficient evidence linking the defendant to that prior conviction. *Id*. Specifically, the Court relied on the admissions by the

16

defendant and the counsel for the defendant to effectuate a clear link between the defendant and the prior conviction.

In *Mungaray v. State*, the Court relied on the findings in *Miller* when finding the record contained sufficient evidence to establish the defendant was the same person previously convicted in a different county. 188 S.W.3d at 184. The Court cited portions of the State's conversation with Court prior to voir dire, excerpts from defense's cross-examination of a witness, the defense's cross-examination of a witness, and the trial judge's dialogue with the state during the pronouncement of sentence. *Id*. at 180-84. Despite the fact that the state failed to "present evidence on two elements of the trial court's cumulation order" – the cause number and court number of the prior conviction – the lack of proof of those two elements did not render the evidence insufficient to support the cumulation order. *Id*.

**Arguments**

***Evidence of Appellant's Prior Conviction in CR2012-428***

Appellant claims that there is "no record evidence of a prior conviction in CR2013-428." Appellant's Brief at 14. However, his claim that no record evidence exists of his conviction in CR2012-428 begs the question as to whether Appellant reviewed the record prior to writing his brief. First, State's Exhibits 28, 29, and 30 were certified copies of the convictions and judgments in CR2012-428. These exhibits were offered, admitted, and published during the trial in the instant case.

RR. Vol. III at 170. State's Exhibit 28, the judgment for Count III in CR2012-428, indicates that Appellant pled guilty to the felony offense of unlawful possession of a firearm, was found guilty of the said offense and was sentenced to ten years confinement in the Texas Department of Criminal Justice. RR. Vol. VI, State's Exhibit 28. State's Exhibit 29, the judgment for Count I in CR2012-428, indicates that Appellant pled not guilty to the felony offense of aggravated assault with a deadly weapon against a family member, was found guilty of the said offense by the jury, and was sentenced to twenty years confinement in the Texas Department of Criminal Justice. RR. Vol. VI, State's Exhibit 29. State's Exhibit 30, judgment for Count II in CR2012-428, indicates that Appellant pled not guilty to the felony offense of endangering a child, was found guilty of said offense by the jury, and was sentenced to ten years confinement in the Texas Department of Criminal Justice. RR. Vol. VI, State's Exhibit 30.

State's Exhibit 27, an excerpted portion of the official transcript from the jury trial in CR2012-428, before the 207th District Court Comal County, Texas and styled the *State of Texas vs. Isreal Reyes, Sr.*, was also offered and admitted during Appellant's trial in the instant case. RR. Vol. III at 166. This exhibit specifically recites the arraignment and plea of Appellant on October 29, 2013 before the Honorable Jack Robison, presiding. Appellant pled not guilty to Counts I and II, aggravated assault with a deadly weapon against a family member and endangering

a child. *Id*. Appellant pled guilty to Count III, unlawful possession of a firearm. *Id*. Count III in CR2012-428 specifically alleged that Appellant was previously convicted of the felony offense of Burglary of a Building on the 27th day of November, 2006, in case number CR-4276-06-A before the 92nd Judicial District Court of Hildago County, Texas. *Id*. Notably, Count II in the instant case also charged Appellant with an offense of unlawful possession of a firearm. Like Count III in CR2012-428, Count II in the instant case also alleged Appellant was previously convicted of the felony offense of Burglary of a Building on the 27th day of November, 2006, in case number CR-4276-06-A before the 92nd Judicial District Court of Hildago County, Texas. RR. Vol. II at 199. Thus, from these exhibits alone, it is clear that Appellant was previously convicted of aggravated assault with a deadly weapon against a family member in CR2012-428 before the 207th Judicial District Court of Comal County, Texas and was sentenced to a term of twenty years in the institutional division of the Texas Department of Criminal Justice.

In addition to the exhibits discussed above, the Honorable Jack Robison presided over both the trial in CR2012-428 and the trial in instant case. As a result, the sentence in CR2012-428 was discussed throughout the trial in the instant case. RR. Vol. V at 8, 49, 62, 68, 70, 73.

19

In the first exchange at trial, the State offered to admit Appellant's guilty plea to Count III in CR2012-428. RR. Vol. III at 164. Counsel for the defense objected to using the plea in the prior case involving different offense dates. *Id.* at 64. In lodging his objection, the following dialogue occurred between the court and counsel for the defense:

> The Court: – What prior case?
> Mr. Garcia: – CR-2012-428, State of Texas versus Isreal Reyes. We have --
> The Court: That's not alleged, so how is that even relevant?
> Mr. Garcia: She wants to use the plea from the prior case, from 428.
> The Court: What prior case? You keep saying "prior case." That doesn't make any sense.
> Mr. Garcia: The one we've already tried.
> The Court: Oh, the one we've already tried. Oh, well, you anticipated that on the issue of what came in on the – yeah, that will be overruled.
> (*Id.* at 166.)

Counsel for the defense references CR2012-428 by its exact cause number and then links his client directly to the prior conviction.

The second exchange occurred during the punishment hearing for the instant case. The following exchange between the court and counsel for the defense:

> The Court: – All right. Now, Mr. Garcia, remind me, didn't he set – wasn't he sentenced by a jury to 20 years?
> Mr. Garcia: – On the previous case, Your Honor.
> The Court: – Yes, that's right.
> Mr. Garcia: – 20 on the --
> The Court: And then we tried again for the shooting the bedpost. Right?
> Mr. Garcia: Correct.

20

The Court: I remember.
(RR. Vol. V at 8).

From this exchange, it is clear that the court is inquiring from defense counsel about Appellant's punishment in CR2012-428. In response, counsel for the defense reminded the court that Appellant's punishment was assessed at twenty years, which correlates with the sentence of twenty years reflected on State's Exhibit 29.

Furthermore, the court interrupted the State's closing arguments on punishment to establish the timeline and judgments for the offenses and convictions in CR2012-428 and the instant case. The following exchange occurred:

The Court: – This case actually happened before the other one that the jury gave him 20 and 10. Right?
Ms. Rankin: – Yes
The Court: And that 20 is aggravated robbery with a deadly weapon, so --- I mean, aggravated assault with a deadly weapon, so it's 3g. Right?
Ms. Rankin: That is correct.
The Court: This is 3g as well, Count I. Got it. So they maxed him – the jury maxed him?
Ms. Rankin: No Your Honor. He was five to 99 because it was also SBI and family violence. So the range of punishment in the first case was five to 99. The jury returned a sentence of 20 years on Count I.
The Court: Yeah, and ten on Count II. Right?
Ms. Rankin: Yes, Your Honor.
The Court: I looked at it earlier this morning.
(RR. Vol. V at 68-69).

Again, this exchange clearly refers to the judgments and sentences in CR2012-428. State's Exhibits 28-30. Prior to the court cumulating the sentence after the jury's finding of guilt in Count I of this indictment, the court sought clarification as to the

21

sentences imposed in CR2012-428. *Id.* at 70. The State then concluded her first portion of closing arguments and urged the court to consider assessing a twenty year punishment for Count I to "run consecutive with the cause number CR-2012-428" *Id*.

During the punishment phase, counsel for the defense objected to the State's questions directed to Appellant on relevance grounds. *Id*. at 57. Counsel for the defense referenced CR2012-428 when urging his relevance objection by claiming the court had already heard "**punishment and everything**" on that separate case and trial. *Id*. (emphasis added). Appellant testified regarding his version about how McCann sustained the injuries to her face. *Id*. Counsel for the defense continued to make reference to Appellant's previous conviction in cause number CR2012-428 while objecting to State's inquiries during the instant trial, claiming the court had already heard the evidence in the prior cause number. *Id*. at 62. The court sustained defense counsel's objection stating "[h]e's already been found guilty of it" and "the fact finder has already found that he [Appellant] intentionally shot her [McCann]". *Id*.

Counsel for the defense even pled with the court to consider a low number of years and concurrent sentences, claiming Appellant already had to serve ten years before he would be eligible for parole because of his conviction in Count I of CR2012-428. RR. Vol. V at 73. Nowhere in the record did counsel for the defense

refute or even attempt to refute that Appellant was the same person previously convicted in CR2012-428. Defense counsel never objected to or corrected the court on any of the numerous times the court referred to Appellant's conviction in CR2012-428. There was no objection made claiming the state had not established that Appellant was in fact the "Isreal Reyes, Sr." named in the State's exhibits. State's Exhibits 27-30. The defense's failure to refute the state's representations – coupled with the arguments consistent with the state's assertions – link Appellant to the conviction in CR2012-428.

Appellant's own testimony at trial further links him to the previous convictions in CR2012-428. First, when he was asked on cross examination how many times he had been convicted of a felony, Appellant sought clarification as to whether the State was referring to the "prior conviction that [he] got for the incident where she got struck in the face." RR. Vol. V at 49. The complainant named in the indictment in both CR2012-428 and the instant case is Billie Jean McCann, Appellant's familial or household member as defined by the Texas Family Code. State's Exhibit 27; CR 6, 7. Count I of CR2012-428 alleged Appellant caused serious bodily injury, a wound to the chin, to Billie Jean McCann. State's Exhibit 27. Count I of instant case alleged that Appellant threatened Billie Jean McCann with a deadly weapon. CR 6, 7. The "she" Appellant referenced was Billie Jean McCann. Thus, Appellant clearly

23

acknowledged on cross examination his prior conviction in Count I of CR2012-428 for injuring Billie Jean McCann's face.

Appellant also admitted to the prior conviction from November 2006 for the felony offense burglary of a building, he acknowledged that he had been convicted of a felony offense on **one** other occasion. RR. Vol. IV at 50. He also explained how the revolver used to commit the offenses alleged in the trial in CR2012-428 differed from the revolver discharged in McCann's direction in the instant case. *Id*. at 58-59.

Cumulative sentences are not void for lack of strict compliance with the five recommended elements of a cumulation order as set out in *Ward v. State*, 523 S.W. 2d 681, 682 (Tex. Crim. App. 1975). The court in *Miller* held that admissions by a defendant's counsel are sufficient evidence to link him to prior convictions for the purpose of cumulating sentences. *Miller*, 33 S.W.3d at 262. The Court in *Mungarary* held that the State's failure to put forth evidence of two elements listed in *Ward* did not result in insufficient evidence to support the cumulated sentence. *Mungaray*, 188 S.W. 3d at 184. The Courts in *Miller* and *Mungaray* refused to look only to the post-conviction record which would ignore relevant portions of the trial record.

The State's exhibits, assertions by defense counsel, exchanges between the court, the state, and counsel for the defense, coupled with Appellant's testimony at

24

trial establish a clear link between Appellant and prior conviction CR2012-428 for purposes of cumulating sentences. The facts and circumstances set forth in *Mungaray* and *Miller* closely correlate with the facts in the instant case. In light of those cases and their holdings, it is clear that there is sufficient evidence within the record to establish that Appellant was the same person convicted and sentenced in CR2012-428.

## *Judicial Notice of CR2012-428*

The trial court could and did take judicial notice of the prior conviction in CR2012-428. Even though the trial judge did not explicitly state that he was taking judicial notice of CR2012-428, he could have taken judicial notice on his own or by motion of either party. *Kubosh v. State*, 241 S.W.3d 60, 66-67 (Tex. Crim. App. 2007). The court may formally take judicial notice as allowed by Rule 201 of the Texas Rules of Criminal Evidence. "In a criminal case, a trial court may notice judicially all of its own records, including all judgments and convictions entered by it. 35 Tex. Jur.3d, Evidence, § 63, p. 109; 24 Tex. Jur.3d, Crim. Law, § 2980, p. 155; 31 C.J.S., Evidence, § 50(1), p. 1018; 29 Am.Jur.2d, Evidence, § 57, p. 89; *Baker v. State,* 79 Tex. Crim. App. 510, 187 S.W. 949 (1916); *Calloway v. State,* 91 Tex. Cr. App. 502, 240 S.W. 553 (1922); *Dunn v. State,* 92 Tex. Cr. App. 126, 242 S.W. 1049 (1922); *Hardison v. State,* 450 S.W.2d 638 (Tex.Cr.App.1970); *Wilson v. State,* 677 S.W.2d 518, 523 (Tex.Cr.App.1984), citing 1 Ray, Tex.

Practice, Evidence, § 186, p. 237." *Turner v. State*, 733 S.W.2d 218, 221-22 (Tex. Crim. App. 1987). A trial court may take judicial notice upon request or *sua sponte.* Tex. R. Evid. 201(c); *Jacobs v. State,* 294 S.W.3d 192, 196 (Tex. App.— Texarkana 2009, pet. ref'd). The court is not required to announce it is taking judicial notice. Courts may infer the trial court took judicial notice based on its actions. *Kubosh,* 241 S.W.3d at 66-67.

The record clearly shows that the trial court contemplated the twenty year sentence decided by the jury in CR2012-428. RR. Vol. V at 75. The court justified a sentence lower than twenty years confinement by differentiating the facts in the CR2012-428 with the facts of the instant case during his pronouncement of sentence by stating that "shooting a bedpost is a little less heinous than shooting your pregnant wife in the face". RR. Vol. V at 75. The sentence in the instant case is half of what the jury imposed in CR2012-428. The court sentenced Appellant on Count I to a term of ten years confinement in the Texas Department of Criminal Justice "consecutive with the other case" *Id*. The "other case" which the court refers to can only refer to the CR2012-428 conviction. It is the only other case that the court could use its discretion to legally cumulate a sentence in this case in compliance with Tex. Code Crim. Proc. Ann. 42.08.

The court also differentiated which counts in the instant case were to run consecutively with the sentence in CR2012-428 and those that are to run

concurrent. The court pronounced sentence for a term of five years confinement for Count II in current case to run "concurrent with the other cases." *Id*. After assessing punishment, the court stated that "[t]he only one that's stacked is Count I, and it's stacked on the other case. So that will increase your certainty of being in prison for five years. Under the circumstances, I think that's fair." *Id*. Each and every time the court, counsel for either side, or even the Appellant himself made reference to "the other case," it is clear that the other case was CR2012-428 where Appellant was convicted of shooting his pregnant wife, McCann, in the face.

### *Invited Error*

The objections by the defense counsel (*supra* at 20) not only help to show the connection between Appellant and prior conviction in CR2012-428, but also raise a situation of estoppel under the doctrine of invited-error. The "law of invited error estops a party from making an appellate error of an action it induced." *Vennus v. State*, 282 S.W.3d 70, 74 (Tex. Crim. App. 2009) (citing *Druery v. State*, 225 S.W.3d 491, 505-06 (Tex. Crim. App. 2007)). "[U]nder [the] invited-error doctrine, a party who has prevented proof of a fact by his erroneous objection will not be permitted to take advantage of his own wrong, and the reviewing court will assume that the fact was duly proved." *Id*. at 73 (citing *Watenpaugh v. State Teacher's Retirement System*, 51 Cal.2d 675 (1959)).

Appellant prevented the State from presenting evidence of Appellant's prior conviction in CR2012-428 through his objections. If Appellant had not prevented the State's questions, the State would have proved the prior conviction and Appellant's link to that conviction through its cross-examination of the Appellant. Because Appellant effectively conceded that the trial court could take judicial notice of CR2012-428, that the evidence was already before the court, and that further evidence on the subject would be repetitious, he may not now on appeal make an error of action he induced. *See Vennus*, 282 S.W.3d at 74. Because further proof of these facts was prevented by Appellant's 'repetitious' objection, the Court should assume the fact was duly proved to prevent Appellant from taking advantage of his own wrong. *See id*. at 73.

**Conclusion**

There is record evidence of a prior conviction in CR2012-428. The official record from the arraignment and plea were offered and admitted along with the certified judgments from CR2012-428. Counsel for the defense made numerous references throughout the trial to the twenty year sentence in CR2012-428 and the specific facts of that case. The state also referenced CR2012-428 throughout the course of the trial and questioned numerous witnesses, including Appellant, about

the facts of that case. The court had dialogue with counsel for both sides clarifying the exact sentence assessed by the jury in CR2012-428.

There is record evidence that Appellant is the same Isreal Reyes Senior convicted in CR2012-428. Appellant himself acknowledged his previous conviction in CR2012-428, referring to the prior conviction as the one where he shot the complaining witness in the face. The court also identifies Appellant as the person previously convicted in CR2012-428 throughout the course of the trial and through sentencing. Counsel for defense never refuted the assertions made to the court or State identifying Appellant as the person previously convicted in CR2012-428, nor did the defense object when the court clearly indicated it had reviewed that case file and notes when considering that prior offense. In fact, counsel for the defense acknowledged Appellant's previous conviction in CR2012-428 when formulating the basis for his arguments and objections. Appellant also prevented the State from eliciting said information with his 'repetitious' objection – essentially conceding that the information was already in the record through judicial notice. He cannot now claim the evidence was insufficient. Accordingly, there is sufficient evidence to support the cumulation order.

## THE JUDGMENT IS VALID UNDER *WILLIAMS V. STATE*

### Summary of the Argument

In his third point of error, Appellant asserts that the cumulation order in the CR2012-427 judgment is invalid due to the lack of specificity. Appellant's Brief at 15. He argues specifically that the cumulation order lacks compliance with the five elements set forth in *Ward*. *Id*. Appellant requests that the Court reform the judgment in Count I allowing the sentence to run concurrent with all other cases.

While the judgment clearly lacks some of the recommended elements listed in *Ward*, the order is still valid and should be affirmed. In the alternative, should the Court find the cumulation order insufficient, the Court has the authority to reform the cumulation order to comply strictly with *Ward* and honor the intentions of the trial court.

### Authorities

A "cumulation order which refers only to a prior cause number is sufficient if the order is entered in the same court as the sentence to which it is made cumulative." *Williams v. State*, 675 S.W. 2d 754, 764 (Tex. Crim. App. 1984). The Court in *Williams* initially set aside the cumulation order of the trial court, which stacked on 99 years to a sentence being served by the appellant, due to lack of compliance with *Ward*. *Id*. at 760. On rehearing, however, the original sentence and judgment of the trial court was affirmed. The Court found that the term

"stacked" in a criminal sentencing is synonymous with the terms cumulative or consecutive. *Id*. at 762. Stating that "a better practice in cumulating sentences is to track the statutory language set out in Art. 42.08," the Court ultimately held that using the word "stacked" in the context of a criminal sentencing is sufficient to let the Texas Department of Corrections know the sentence begins when the sentence in the prior case ceases to operate. *Id*. at 763.

*Williams* also considered the five recommended elements set forth in *Ward*. The trial court in *Williams* lacked three of the recommended elements. *Id*. at 764. Specifically, it failed to list the dates and names of the courts of the previous convictions, designate the counties where the prior convictions arose, and the nature of the prior convictions. *Id*. The Court nevertheless affirmed the original cumulation order, stating that "a cumulation order which refers only to a prior cause number is sufficient if the order is entered in the same court as the sentence to which it is made cumulative." *Id*.

An appellate court can reform a judgment where it has the required data and evidence before it. In *Banks v. State*, the Court of Criminal Appeals of Texas considered whether the San Antonio Court of Appeals decision to reform the sentence of the trial court from a consecutive to concurrent sentence was proper. 708 S.W. 2d 460, 462 (Tex. Crim. App. 1986). The San Antonio Court of Appeals invalidated the cumulation order on grounds of enough information to comply with

the rulings in *Ward*. *Id*. The cumulation order in *Banks* neglected to include the five recommended, elements stating only that the sentence would "run consecutively (sic) with cause number 80-CR0430-A and 80-CR-0431-A". *Id*. at 461. While the order on its face was insufficient, the record contained the necessary information "to allow the appellate court to accomplish that which was clearly intended" by the trial court at the time of sentencing. *Id*. The Court of Criminal Appeals reviewed the trial record and determined that the record contained all of the five recommended elements set forth in *Ward* and reformed the judgment and sentence to reflect the trial court's intention to stack the sentences. *Banks* at 461-62. Just as appellate courts could reform judgments to reflect an affirmative finding of a deadly weapon to be "apparent to penitentiary authorities," so too could they reform judgments to comply with *Ward*. *Id*.

**Argument**

The post-conviction judgment for Count I in instant case indicates only that the sentence is to run consecutively with CR2012-428. Because the same trial court oversaw both convictions, under *Williams*, that is all that is required. *See* 675 S.W. 2d at 763. Additionally, the other four of the *Ward* recommended elements are found within the record as a whole. Although the cumulation order does not included all of the recommended elements set forth in *Ward*, in light of the holding in *Williams*, the cumulation order is still valid and should be affirmed. The judge

32

presiding over CR2012-428 is the same judge that presided over the trial in the instant case and pronounced the sentence to cumulate with CR2012-428. CR at 5; State's Exhibits 27-30. Additionally, this Court's record in the dismissed appeal 03-14-00446-CR will also show the Honorable Jack Robison was the judge in CR2012-428, and this Court may take judicial notice of that fact. *Bridges v. State*, 468 S.W. 2d 451; *Watkins v. State*, 245 S.W.3d 444, 455-56 (Tex. Crim. App. 2008) (stating an appellate court may exercise discretion and take judicial notice of "adjudicated facts" for the first time on appeal). The cases were both held in the 207th Judicial District Court of Comal County, Texas. The Appellant was represented at trial by the same attorney in both trials. Since the cumulated sentences were imposed by the same court, by the same judge, Appellant was represented by the same attorney, only seven months lapsed between the sentences, and the cause number was included in the order, the judgment should be affirmed under *Williams*. *See* 675 S.W.2d at 764.

In the alternative, if the Court would nevertheless require the additional *Ward* elements, the Court can reform the cumulation order to include more specific language to comply with *Ward*.

The record before the Court contains the all of the recommended elements under *Ward*. The previous trial court number, CR2012-428, is correctly contained within the cumulation order and is referenced throughout the trial. CR at 43. The

correct name of the court, the 207th Judicial District Court of Comal County, and dates of prior convictions are in the record before the Court. The term of years, twenty years confinement in the Texas Department of Criminal Justice, and nature of the previous conviction in CR2012-428, aggravated assault with a deadly weapon against a family member, are also in the record before the Court. RR. Vol. III at 170; State's Exhibits 28-30.

Furthermore, Appellant acknowledges in his brief that the Court has the authority to reform a judgment to reflect Appellant's pleas of "not guilty," the true pleas entered by Appellant at arraignment. Appellant's Brief at 16. Under Appellant's same rationale, the proper remedy would be to reform the judgment by adding all of the *Ward* requisites to reflect the trial court's true intention in cumulating the sentence with the sentence imposed in CR2012-428. Appellant seems to only acknowledge the Court's authority to reform judgments in ways which comply with Appellant's positions.

# THE COURT SHOULD REFORM THE JUDGMENTS TO REFLECT APPELLANT'S "NOT GUILTY" PLEAS

## Summary of Argument

Appellant requests the Court reform the judgments to reflect his pleas of "not guilty." The State agrees that the judgments should be reformed to reflect said pleas.

## Argument

In his fourth point of error, Appellant requests that the judgments reflect pleas of "not guilty" to Counts I and II of the instant case. Appellant's Brief at 16. Appellant suggests reformation of the judgments to reflect Appellant's "not guilty" pleas. The State agrees that the judgments should be reformed to reflect Appellant's pleas of "not guilty" to Counts I and II of the indictment. RR. Vol. II at 199; CR at 43, 47. The Court has the authority to reform judgments when the necessary evidence and data is before the Court. *Splawn v. State*, 160 S.W.3d 103 (Tex. App. – Texarkana 2005, pet. ref'd).

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, the State respectfully prays that this Court deny Appellant's first three points of error and affirm the judgment of the trial court.

Respectfully Submitted,

/s/ Christine Rankin
**Christine Rankin**
Assistant Criminal District Attorney
SBN: 24044716
150 N. Seguin Ave., Suite 307
New Braunfels, Texas 78130
Phone: (830) 221-1300
Fax: (830) 608-2008
rankic@co.comal.tx.us

ATTORNEY FOR THE STATE

## CERTIFICATE OF SERVICE

I, Christine Rankin, attorney for the State of Texas, Appellee, hereby certify that a true and correct copy of this brief has been delivered to the attorney of record for the opposing party:

Richard Wetzel
wetzel_law@1411west.com
1411 West Avenue, Suite 100
Austin, TX 78701

By electronically sending it to the above email address through efile.txcourts.gov e-filing service, this 10th day of February, 2015.

/s/ Christine Rankin
**Christine Rankin**

## CERTIFICATE OF COMPLIANCE

I, Christine Rankin, hereby certify that this document was prepared in MS Word and it does not exceed the allowable length for an appellate brief, pursuant to Tex. R. App. Pro. 9.4, as amended and adopted on November 30, 2012, by Order of the Texas Court of Criminal Appeals. The approximate total of words in this document, as calculated by the word processing software, is 7,882 words.

/s/ Christine Rankin
**Christine Rankin**